**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DMITRY ZINGER, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

v.

ADAPTHEALTH CORP.,

Defendant.

CASE NO. 2:26-cv-04287-JMY

CLASS ACTION

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S PUTATIVE CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

RELEVANT ALLEGATIONS ........................................................................................4

APPLICABLE LEGAL STANDARDS ...........................................................................4

ARGUMENT ...............................................................................................................5

I. Plaintiff's Claims Fail as a Matter of Law, and Thus His Entire Complaint Should Be Dismissed With Prejudice Under Rule 12(b)(6), Because The Plain and Unambiguous Language of Section 227(c) of the TCPA Does Not Apply to Text Messages....................5

II. The Entire Complaint Should Also Be Dismissed Because Plaintiff Fails to Allege Sufficient Facts Supporting Other Essential Elements of His Two Asserted Claims. .......12

A. Counts I and II Should Be Dismissed Because Plaintiff Fails to Plausibly Allege Receipt of an Actionable "Telephone Solicitation" or "Telemarketing" Call. ........................................................................................................13

B. Count I Should Also Be Dismissed Because Plaintiff Failed to Plausibly Allege Who Registered the Subject Phone Number on the National DNC Registry. ..........................................................................................................16

C. Count II of the Complaint Should Also Be Dismissed Because Plaintiff Failed to Plausibly Allege a Violation of the TCPA's "Internal" DNC Regulations.........17

D. Plaintiff Failed to Plausibly Allege a "Knowing" or "Willful" TCPA Violation in Support of His Request for Treble Damages. ...............................................19

III. The Entire Complaint Should Also Be Dismissed Because Plaintiff Fails to Plausibly Allege a Theory of Liability Under the TCPA (i.e., Direct or Vicarious Liability). ..........20

CONCLUSION ............................................................................................................27

## TABLE OF AUTHORITIES

### CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ....................20

*Aderhold v. car2go N.A. LLC*,
668 F.App'x 795 (9th Cir. 2016) ....................16

*Andersen v. Nexa Mortg., LLC*,
2024 WL 3762098 (C.D. Cal. Aug. 12, 2024) ....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5, 26, 27

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*,
708 F.3d 737 (6th Cir. 2013) ....................9

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012) ....................18, 19

*Bank v. City of Menasha*,
627 F.3d 261 (7th Cir. 2010) ....................2

*Barr v. Macy's.com, LLC*,
2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023) ....................18, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5, 14, 27

*Bell v. Hawx Servs., LLC*,
2025 WL 2533371 (E.D. Cal. Sept. 3, 2025) ....................14

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024) ....................23

*Bennett v. Celtic Ins. Co.*,
2022 WL 865837 (N.D. Ill. Mar. 23, 2022) ....................22

*Blow v. Bijora, Inc.*,
191 F. Supp. 3d 780 (N.D. Ill. 2016) ....................7

*Bonner v. Justia Inc.*,
2019 WL 3892858 (D.N.J. Aug. 19, 2019) ....................4

*Bridges v. Torres*,
809 F.App'x 69 (3d Cir. 2020) ....................5

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ....................21

*Canary v. Youngevity Int'l, Inc.*,
2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ....................19

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011) ....................17

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ....................17, 18

*Cole v. C/T Install America, LLC*,
2026 WL 916582 (E.D. Pa. March 23, 2026) ....................12

*Cornell Univ. v. Illumina, Inc.*,
2012 WL 1885129 (D. Del. May 23, 2012) ....................5

*Cosenza v. Nice North America, LLC*,
2026 WL 2248829 (C.D. Ill. Aug. 4, 2026) ....................23, 25

*Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*,
450 F.3d 130 (3d Cir. 2006) ....................5

*Dahdah v. Rocket Mortgage LLC*,
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898 (Nov. 17, 2023) ....................14

*Davis v. CVS Pharm., Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025) .................... passim

*Davis v. Michigan Dept. of Treasury*,
489 U.S. 803 (1989) ....................10

*Dobronski v. Russo*,
2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ....................25

*Doyle v. GoHealth, LLC*,
2023 WL 3984951 (D.N.J. Mar. 30, 2023) ....................20, 23, 25

*Doyle v. Matrix Warranty Sols., Inc.*,
2023 WL 4188313 (D.N.J. June 26, 2023) ....................20

*Drew v. Lexington Consumer Advocacy*,
LLC, 2016 WL 1559717 (N.D. Cal. Apr. 18, 2016) ....................4

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ....................14

*El-Sayed v. Naturopathica Holistic Health, Inc.*,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ....................6, 8, 9

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021) ....................6

*FCC v. AT&T Inc.*,
562 U.S. 397 (2011) ....................10

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ....................22

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023) ....................3, 7, 14, 16

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ....................14

*Gulden v. Consol. World Travel Inc.*,
2017 WL 3841491 (D. Ariz. Feb. 15, 2017)....................14

*Hamilton v. Voxeo Corp.*,
2009 WL 1868542 (S.D. Ohio June 25, 2009)....................18

*Horton v. Molina Healthcare of Texas, Inc.*,
2026 WL 490216 (N.D. Tex. Feb. 6, 2026)....................15

*Hulett v. EYEBUYBIRECT*,
*2025* WL 1677071 (N.D.N.Y. June 13, 2025)....................18

*Hurley v. Messer*,
2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018)....................26

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
2015 WL 13648356 (W.D. Ark. June 16, 2015)....................26

*In re Dish Network, LLC*,
2013 WL 1934349, 28 FCC Rcd. 6574 (2013)....................21, 22, 24

*In Re Rules & Regs. Implementing the TCPA*,
18 FCC Rcd. 14014 (2003)....................19

*In re Rules & Regs. Implementing the TCPA*,
21 FCC Rcd. 3787 (Apr. 6, 2006)....................16

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015)....................2, 22

*Irvin v. Sonic Indust. Serv., LLC*,
2026 WL 1098403 (N.D. Ga. Apr. 20, 2026)....................6, 9

*James v. Smarter Contact, Inc.*,
2026 WL 879244 (M.D. Fla. Mar. 31, 2026)....................6, 10, 12

*Jance v. Homerun Offer LLC*,
2021 WL 3270318 (D. Ariz. July 30, 2021)....................13

*King v. Burwell*,
135 S.Ct. 2480 (2015)....................6, 16

*Kirtz v. Trans Union LLC*,
46 F.4th 159 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42 (2024)....................6, 16

*Knutson v. Blue Light Sec., Inc.*,
2018 WL 1172611 (S.D. Cal. Mar. 6, 2018)....................13

*Kucana v. Holder*,
558 U.S. 233 (2010)....................9

*Laccinole v. Appriss, Inc.*,
453 F. Supp. 3d 499 (D.R.I. 2020)....................18

*Laccinole v. Rocket Mortg., LLC*,
609 F. Supp. 3d 68 (D.R.I. 2022)....................18

*Landy v. Nat. Power Sources, LLC*,
2021 WL 3634162 (D.N.J. Aug. 17, 2021) ....................20, 26

*Lary v. Trinity Physician Fin. & Ins. Servs*.,
780 F.3d 1101 (11th Cir. 2015) ....................20

*Less v. Quest Diagnostics Inc.*,
2021 WL 266548 (N.D. Ohio Jan. 26, 2021)....................16

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....................6, 12

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013) ....................24

*Mann v. Brenner*,
375 F. App'x 232 (3d Cir. 2010)....................26

*McGonigle v. Pure Green Franchise Corp.*,
2026 WL 111338 (S.D. Fla. Jan. 15, 2026) ....................8

*Melito v. Am. Eagle Outfitters, Inc*.,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)....................25

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)....................22

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)....................5

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015)....................15

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015)....................23

*Neitzke v. Williams*,
490 U.S. 319 (1989)....................26

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) ....................21

*Newell v. Children's Dental Health Assocs., LLC*,
2026 WL 927378 (E.D. Pa. Apr. 6, 2026) ....................12

*Newhart v. Quicken Loans Inc*.,
2016 WL 7118998 (S.D. Fla. Oct. 12, 2016)....................16

*Nken v. Holder*,
556 U.S. 418 (2009)....................9

*Norman v. Northern Ill. Gas Co. Inc*.,
2014 WL 184774 (N.D. Ill. Jan. 16, 2014)....................15

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019)....................20

*Pero v. Brown-Daub*,
2026 WL 1747214 (E.D. Pa. June 17, 2026) ....... 12

*Radvansky v. 1-800-FLOWERS.COM, Inc.*,
2026 WL 456919 (N.D. Ga. Feb. 17, 2026) ....... passim

*Redden v. Smith & Nephew, Inc.*,
2010 WL 2944598 (N.D. Tex. July 26, 2010) ....... 5

*Richards v. Fashion Nova, LLC*,
2026 WL 847568 (S.D. Ind. Mar. 26, 2026) ....... 6, 9, 11

*Richards v. Shein Distrib. Corp.*,
2026 WL 847584 (S.D. Ind. Mar. 26, 2026) ....... 6

*Roberts v. Sea-Land Servs., Inc.*,
566 U.S. 93 (2012) ....... 10

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ....... 16, 17, 23

*Rogers v. Interstate Nat'l Dealer Servs. Inc.*,
2020 WL 4582689 (N.D. Ohio Aug. 10, 2020) ....... 22

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,
2022 WL 2713278 (N.D. Iowa June 9, 2022) ....... 16

*Santiago v. Warminster Township*,
629 F.3d 121 (3d. Cir. 2010) ....... 5

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ....... 10

*Saunders v. NCO Fin. Sys., Inc.*
910 F. Supp. 2d 464 (E.D.N.Y. 2012) ....... 2

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020) ....... 23, 27

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) ....... 21

*Simmons v. Charter Commc'ns, Inc.*,
222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017) ....... 18

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ....... 20, 21, 22

*Smith v. Getmehealthcare, LLC*,
2025 WL 3771271 (M.D. Fla. Dec. 31, 2025) ....... 15

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ....... 20

*Steidinger v. Blackstone Med. Servs.*,
2026 WL 2028517 (7th Cir. July 14, 2026) ....... passim

*Stockdale v. Skymount Prop. Grp., LLC*,
2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ....................6, 7, 10, 12

*Tuso v Lennar Corp.*,
2024 WL 1239474 (S.D. Fla. Mar. 22, 2024)....................21

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) ....................13

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) ....................13, 14, 15

*Wick v. Twilio Inc.*,
2017 WL 2964855 (W.D. Wash. July 12, 2017) ....................22

*Wilson v. MEDVIDI Inc.*,
2025 WL 2856295 (N.D. Cal. Oct. 7, 2025)....................25

*Woodard v. Health Ins. All.*,
2024 WL 942629 (N.D. Ill. Mar. 5, 2024)....................23

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
80 F. Supp. 3d 610 (E.D. Pa. 2015) ....................26

**STATUTES**

47 U.S.C. § 227(a)(4)....................8

47 U.S.C. § 227(b) .................... passim

47 U.S.C. § 227(c) .................... passim

47 U.S.C. § 227(e)(8)(A), (B)....................8

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified
at 47 U.S.C. § 227(e)) ....................7, 8

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c)(2)....................1, 12, 16

47 C.F.R. § 64.1200(d) ....................1, 13, 18, 19

47 C.F.R. § 64.1200(d)(3)....................19

47 C.F.R. § 64.1200(f)(5) & (f)(15)....................16

47 C.F.R. § 64.1200(f)(13) ....................13

47 C.F.R. § 64.1200(f)(15) ....................13

S. Rep. No. 102-178 (1991) ....................9

**RULES**

Fed. R. Civ. P. 12(b)(6).................... passim

## INTRODUCTION

In his putative Class Action Complaint (*see* Dkt. 1), Plaintiff Dmitry Zinger ("Plaintiff") conclusorily alleges, without sufficient requisite supporting facts, that Defendant AdaptHealth Corp. ("Adapt") violated certain "Do-Not-Call ("DNC") provisions of the Telephone Consumer Protection Act, *i.e.*, 47 U.S.C. §§ 227, *et seq.* (the "TCPA"). In particular, in Count I, Plaintiff claims that Adapt violated one of the TCPA's implementing regulations (*i.e.,* 47 C.F.R. § 64.1200(c)(2)) relating to certain calls made to phone numbers properly registered on the National DNC Registry. In Count II, Plaintiff claims that Adapt violated the TCPA's "internal" DNC procedural regulations (*i.e.,* 47 C.F.R. § 64.1200(d)) governing policies and procedures companies must have for recognizing "stop" requests (or the like). The private cause of action afforded under the statute for purported violations of either regulation is found in 47 U.S.C. § 227(c)(5), which on its face <u>only</u> restricts unlawful "telephone calls." Here, however, Plaintiff bases his claims exclusively on ***text messages*** that he vaguely avers were sent by "Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf" to his DNC-registered cell phone number, without his consent. In all, Plaintiff's conclusory allegations simply do not pass muster under federal pleading standards for ***any*** federal claim. This is doubly true for the accepted standards for pleading TCPA claims.

Indeed, though the TCPA is undoubtedly an important remedial statute designed to protect consumers from unscrupulous telemarketers, federal district courts across the country have uniformly recognized that TCPA plaintiffs do not have a lower hurdle to clear to make it beyond the pleading stage in federal court than any other federal plaintiff, and cannot simply offer conclusory allegations and get a free pass to discovery under the Federal Rules of Civil Procedure. This is for good reason. As the Court is aware, the TCPA has become one of the most heavily

litigated statutes in the U.S. since its enactment in 1991, with dozens of new complaints filed weekly, with most styled as putative class actions (like this case). Given the favorable relief the TCPA affords, this is unsurprising: up to $500 in statutory damages per call, which can be trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(c)(5). And while attorneys' fees are not available under it, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from otherwise innocent defendants through expensive class action litigation. *Saunders v. NCO Fin. Sys., Inc.* 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012). *See also Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (noting plaintiffs can "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit"). Thus, as such cases can obviously be financially lucrative for profit-seeking plaintiffs and counsel, the side effect of the TCPA is that it has unwittingly spawned a cottage industry of class action litigation, "has strayed far from its original purpose" as a remedial statute, and has "become the poster child for lawsuit abuse" in this country. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015).

It is against this backdrop that federal courts nationwide have realized that, at the pleadings stage in TCPA cases and particularly in putative class actions, they must balance the important goal of protecting consumers from unwanted calls against the competing but equally important goal of protecting defendants from abusive and costly litigation. As such, TCPA complaints lacking requisite factual support or that do not state a legally cognizable claim are often dismissed by courts under Rule 12(b)(6). Plaintiff's defective Complaint here should suffer the same fate.

While the Complaint lacks plausible factual support, its primary fatal flaw is a legal one. Specifically, several federal district courts and one Court of Appeals (so far) have done a thorough

analysis of this key issue, and have correctly concluded that the private cause of action afforded under Section 227(c) of the TCPA can ***only*** be invoked for unlawful "***telephone calls***" and not just for any form of telephonic communication, such as modern text messages which did not exist when that provision was enacted. As Plaintiff's claims rest entirely on texts, they fail from the start.

Even if *arguendo* Plaintiff had pled a legally cognizable TCPA claim (and he did not), his entire ill-pled Complaint should nevertheless be dismissed for at least the following reasons:

**First**, Plaintiff did not adequately plead facts, in accordance with bedrock federal pleading standards, supporting several essential elements of his two asserted TCPA DNC claims, which further warrants dismissal of his entire Complaint under Rule 12(b)(6). For instance, Plaintiff omitted sufficient non-conclusory facts supporting a plausible inference, *inter alia*, that: (i) he received an actionable "telephone solicitation" or "telemarketing" call as those terms are defined by the TCPA's related implementing regulations; (ii) he registered his own cell phone number on the National DNC Registry, as the plain language of the statute (which this Court is obligated to apply here) expressly requires; (iii) Adapt lacked internal DNC procedures prior to the transmission of the alleged texts; and/or (iv) any violation was "willful" or "knowing" entitling Plaintiff to treble damages.

**Second**, it is settled that, regardless of the other elements of their claims, all TCPA plaintiffs must first plead plausible facts supporting a theory of liability (*i.e.*, direct or vicarious liability) against the defendant, or they face a complete dismissal under Rule 12(b)(6). Applying this steadfast rule here requires Plaintiff to plausibly allege, with sufficient non-conclusory factual support, that Adapt: (i) itself, not a third party, "physically" sent each of the subject communications directly to him (*i.e.*, direct liability), or (ii) had a common law agency relationship with a third party who did physically send the subject texts (*i.e.*, vicarious liability). At the same time, it is equally well-established that merely parroting the statutory text or case law, taking an

equivocating "either/or" approach, and concluding that the "defendant and/or its agents" placed or initiated the subject calls (as Plaintiff did) is insufficient to plead such theories, without more. In short, TCPA plaintiffs cannot expect to meet the *Iqbal*/*Twombly* standard by conclusorily alleging that "***someone*** violated the TCPA," but rather must plead enough specific plausible facts to show there is a valid theory under which the specific defendant in the case could be held liable. *Drew v. Lexington Consumer Advocacy,* LLC, 2016 WL 1559717, at *8 (N.D. Cal. Apr. 18, 2016) (emphasis original). As Plaintiff failed to do so, his entire Complaint is doomed to dismissal.

**RELEVANT ALLEGATIONS**

Plaintiff alleges (or, rather, concludes) that "Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf" violated the TCPA's DNC provisions by sending "unsolicited telemarketing text messages" to his cell phone without his consent or after he revoked his consent. Dkt. 1, ¶¶ 23-30, 72, 77. While Plaintiff concludes that the "messages were sent for the purpose of encouraging the purchase of Defendant's products and services," none of the subject text messages, on their face per the screenshots provided, actually offered to sell Plaintiff any goods or services, but instead appear to relate to an ongoing transaction or order. *See id.,* ¶¶ 24, 29, 34. And while Plaintiff avers that his "telephone number is registered on the National Do Not Call Registry," he does not allege who registered it. *Id.* ¶ 18. As discussed below, such conclusory allegations do not come close to meeting federal pleading standards, let alone to stating a cognizable or plausible TCPA claim.

**APPLICABLE LEGAL STANDARDS**

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) where, as here, a plaintiff fails to plead a cognizable legal theory or to sufficiently plead facts supporting one. *See, e.g., Bonner v. Justia Inc.*, 2019 WL 3892858, at *3 (D.N.J. Aug. 19, 2019) (citation omitted). As to the latter, a

"bare assertion" or "conclusory allegation[s]" will not suffice to avoid a dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, while this Court must generally accept well-pled facts as true under Rule 12(b)(6), it need not do so for conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions. *See, e.g., Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Bridges v. Torres*, 809 F.App'x 69, 71 (3d Cir. 2020); *Santiago v. Warminster Township,* 629 F.3d 121, 128 (3d. Cir. 2010); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). *See also Cornell Univ. v. Illumina, Inc*., 2012 WL 1885129, at *5 (D. Del. May 23, 2012), *report and rec. adopted,* 2012 WL 2564888 (June 29, 2012) ("[W]hen deciding a Rule 12(b)(6) motion, 'a court is not to strain to find inferences favorable' to the non-moving party.") (quoting *Redden v. Smith & Nephew, Inc*., 2010 WL 2944598, at *3 (N.D. Tex. July 26, 2010)).

## ARGUMENT

### I. Plaintiff's Claims Fail as a Matter of Law, and Thus His Entire Complaint Should Be Dismissed With Prejudice Under Rule 12(b)(6), Because The Plain and Unambiguous Language of Section 227(c) of the TCPA Does Not Apply to Text Messages.

As an initial matter, Plaintiff's entire Complaint fails as a matter of law because the sole legal basis for both of his TCPA claims does not cover text messages. And since no amount of factual amendment can cure this legal defect, a complete dismissal with prejudice on this basis is warranted.

As noted above, on its face, Section 227(c) of the TCPA creates a private right of action ***only*** for a person who has "received more than one ***telephone call*** within any 12-month period" in violation of the DNC regulations. 47 U.S.C. § 227(c)(5) (emphasis added). As several courts (including the Seventh Circuit, which just became the first appellate court to weigh in on this key issue) have correctly recognized, Section 227(c) of the TCPA "doesn't mention telephone messages, nor does it use the more encompassing term, telephone solicitation." *Steidinger v. Blackstone Med.*

*Servs.*, 2026 WL 2028517, at *2 (7th Cir. July 14, 2026) (applying statutory construction principles and holding Section 227(c)(5) does not provide a private right of action for unwanted text messages because the statute is limited to "telephone calls," and that text messages are not telephone calls within the meaning of that provision); *see also Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1272-1273 (N.D. Fla. 2025) (dismissing with prejudice on this basis under Rule 12(b)(6)). These courts and many others have correctly concluded that "[t]he statutory text . . . is clear that only telephone calls are actionable under § 227(c)(5), not text messages." *Radvansky v. 1-800-FLOWERS.COM, Inc.,* 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) (dismissing on this basis).[1] And again, *Steidinger* is the <u>only</u> appellate-level decision to directly confront this question to date. In the absence of contrary Circuit authority, the Court should adopt its well-reasoned analysis here.

Moreover, as the Supreme Court recently reiterated, "[e]very statute's meaning is ***fixed at the time of enactment***." *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 400 (2024) (emphasis added). Thus, federal courts "must interpret what Congress wrote" when Section 227(c) was enacted in 1991, and they cannot rewrite it to update it for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405, 409 (2021). Further, it is axiomatic that if a statute's language is plain and unambiguous—like the TCPA's language certainly is—federal courts need not analyze the statute further when performing a construction analysis and "must enforce it according to its terms." *King v. Burwell,* 135 S.Ct. 2480, 2489 (2015). *See also Kirtz v. Trans Union LLC,* 46 F.4th 159, 162 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42 (2024) ("[W]here Congress has clearly expressed its intent, we may neither second-guess its choices nor

---

[1] *See also Stockdale v. Skymount Prop. Grp., LLC*, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026); *El-Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *James v. Smarter Contact, Inc.,* 2026 WL 879244, at *3-5 (M.D. Fla. Mar. 31, 2026); *Irvin v. Sonic Indust. Serv., LLC*, 2026 WL 1098403, at *2–5 (N.D. Ga. Apr. 20, 2026); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2-4 (S.D. Ind. Mar. 26, 2026); *Richards v. Shein Distrib. Corp.*, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026) (each ruling similarly and dismissing for same reason).

decline to apply the law as written."); *Stockdale*, 2026 WL 591842, at *4 ("***Where, as here, the language of the statute is clear, the Court's analysis stops***.") (emphasis added)).

Courts applying these core principles have therefore looked to the plain meaning of the term "telephone call" as of the date of enactment (*i.e.*, 1991) and concluded that texts are not covered by Section 227(c) because texts did not even exist yet. *Steidinger*, 2026 WL 2028517, at *2 (citing *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016) (noting that the first text message was sent in December 1992)); *see also Davis*, 797 F. Supp. 3d at 1273 (ruling similarly); *Stockdale*, 2026 WL 591842, at *3 (same). As the Seventh Circuit recently held, the "ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of § 227," make clear that texts are <u>not</u> calls under Section 227(c) of the TCPA. *Steidinger*, 2026 WL 2028517, at *2. This legal defect alone dooms Plaintiff's entire Complaint.

In response to this Motion, Plaintiff may invite this Court, and the Court may be tempted, to expand the plain language of Section 227(c) to cover <u>all</u> communications to or from a phone. The Court should decline this invitation, as doing so would violate the well-settled statutory construction principles discussed above and stretch the plain and unambiguous language of the statute far beyond Congress' express limits to its breaking point. *See Radvansky,* 2026 WL 456919 at *4 (rejecting similar invitation). Indeed, a comprehensive review of the statute's history, plain language, and overall structure confirms that Congress did <u>not</u> employ language suggesting the term "telephone call" used in Section 227(c) would serve as a catchall for any present or future phone technology.

*First*, Congress has amended the TCPA multiple times since its enactment but has <u>never</u> amended Section 227(c) to include texts. In 2018, for example, Congress amended the statute to address text messages in connection with Caller ID requirements, which fall under a different provision of the statute. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P,

§ 503(a) (codified at 47 U.S.C. § 227(e)). In doing so, Congress expressly distinguished between "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A), (B). These amendments demonstrate three critical points: (1) Congress knows how to differentiate between technologies; (2) it did not just assume that texts were already covered by the TCPA's reference to "telephone calls" (or else there would have been no need to amend Section 227(e) to include them); and (3) it did not intend every provision of the TCPA (which function independently from each other[2]) to sweep in texts. *See Radvansky*, 2026 WL 456919, at *4; *see also El-Sayed,* 2025 WL 2997759, at *2 (noting the fact that the term "'text message' appears elsewhere in the TCPA and related amendments…confirms Congress understood the pertinent distinction and legislated mindful of the distinction."). At bottom, expanding "telephone call" in Section 227(c) to encompass every form of communication transmitted to or from a phone, as Plaintiff appears to want here, would not only depart from the statute's plain and unambiguous text (which is dispositive) but it also "would likely more than double the number of private causes of action authorized by the TCPA." *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026).

*Second*, Congress defined "telephone solicitation" in 47 U.S.C. § 227(a)(4) to include "the initiation of a telephone call or message." Though this separate section refers to artificial or prerecorded ***voice*** messages, it does not refer to "text messages"; and Congress' deliberate use of "telephone call or message" in a "neighboring provision" merely highlights that the term "telephone

[2] In fact, the TCPA was designed to regulate ***several*** independent types of potential telemarketing concerns, including live voice solicitations (*see* 47 U.S.C. § 227(c)); artificial or pre-recorded voice messages (*see* § 227(b)(1)(B)); auto-dialing to telephones (e.g., cell phones) where the subscriber is charged for the call (*see* § 227(b)(1)(A)(iii)); automated telemarketing to medical or emergency facilities (*see* § 227(b)(1)(A)(i)); the transmission of unsolicited faxes (*see* § 227(b)(1)(C)); and caller ID requirements (*see* § 227(e)). To read "telephone call" in Section 227(c) to cover any form of communication to and from a telephone would sweep in faxes and other types of communications which Congress did not intend to be covered by Section 227(c)—such as emails, which are sent by modern smart phones and not regulated by the TCPA. Texts are no different—they are a distinct form of technology given separate statutory treatment by Congress.

call" as used in Section 227(c) does not encompass all "messages." *Steidinger*, 2026 WL 2028517, at *2-3; *Davis*, 797 F. Supp. 3d at 1274. *See also Radvansky*, 2026 WL 456919, at *4 ("construing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage"); *Irvin*, 2026 WL 1098403, at *4 (ruling similarly and declining to apply Section 227(a)(4) to 227(c)). In short, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 558 U.S. 233, 249 (2010) (quoting *Nken v. Holder,* 556 U.S. 418, 430 (2009)). This belies any argument that texts are "telephone calls" under the plain language of Section 227(c). Rather, Congress' omission of texts from the scope of Section 227(c) is, and remains, intentional and deliberate. This Court must by law honor that deliberate choice here.

*Third*, Congress has consistently drawn technology-specific distinctions within the TCPA. For example, although a fax transmission could be described colloquially as a "call" to the extent it is a communication transmitted using a telephone or over a telephone line, Congress subjected fax advertisements to a separate regulatory scheme under Section 227(b), not Section 227(c), because faxes raise distinct concerns (*e.g.*, the consumption of paper/toner). *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 743 (6th Cir. 2013) (citing S. Rep. No. 102-178, at 4–5 (1991)). As noted above, the same pattern appears throughout the TCPA's text, which differentiates among autodialed calls, prerecorded voice messages, live calls, and faxes, etc., each of which is assigned different statutory treatment. *See also El-Sayed*, 2025 WL 2997759, at *2.

Further, numerous courts examining this issue have found that voice calls and text messages differ "in several important ways" including that text messages, unlike telephone calls, "do[] not require that a person pick up a call, listen to a voice, or tie up their phone's line." *Fashion Nova*,

2026 WL 847568, at *3. *See also Stockdale,* 2026 WL 591842, at *4 (ruling similarly); *James*, 2026 WL 879244, at *3–5 (same); *Steidinger*, 2026 WL 2028517, at *2, 4-5 (same). So should this Court.

Plaintiff may also cite to other decisions interpreting whether a text is a "call" under Section 227(b) to suggest that texts also qualify as a "telephone call" under Section 227(c).[3] That would be unavailing. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)). Here, Sections 227(b) and (c) use the word "call" in different contexts. Indeed, "Section 227(b)(1)(A) [of the TCPA] deals with 'a broader prohibition on 'any call'" and not "the statutory term 'telephone call' at issue here" with respect to DNC claims under Section 227(c). *See James,* 2026 WL 879244, at *3-5 (noting that courts relying on prior interpretations of Section 227(b) improperly focus on the verb "call" used in Section 227(b) and did not consider the definition or modifying effect of the term "telephone" in 227(c) whereas "[i]n Section 227(c)(5), 'call' is used as a noun") (citing *Davis*, 797 F. Supp. 3d at 1273); *see also Steidinger*, 2026 WL 2028517, at *2, 4-5 (recognizing that cases interpreting Section 227(b) are inapplicable to this issue and concluding that, "in 1991, a 'telephone call' [used in Section 227(c)] referred to communication via sound" and that "[t]ext messages do not reproduce sounds"). In short, using authorities interpreting the word "call" under Section 227(b) to determine the meaning of "telephone call" in Section 227(c) is comparing apples to oranges. *See also FCC v. AT&T Inc.,* 562 U.S. 397, 402-403 (2011) (noting different parts of speech sharing a root word "may have meanings as disparate as any two unrelated words").

[3] *See, e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (interpreting the definition of the verb "call" in Section 227(b) using the 1993 Webster's Dictionary, and a definition from a 1989 dictionary largely mirroring other definitions of "call" as a verb).

Taking the "overall statutory scheme" into consideration only underscores why cases interpreting the verb "call" as used in the context of Section 227(b) do not apply to interpret that same word used in a different context (as a noun) in Section 227(c). Again, a review of the statute's structure and history shows that Congress did not intend Section 227(c) (or the entire TCPA for that matter) to cover all communications to and from a phone without exception; and it has consistently drawn distinctions among different technologies (like autodialed calls, prerecorded messages, live calls, and faxes) when legislating in this space, each subject to different statutory treatment, as noted above. The TCPA illustrates this through its treatment of faxes, which are regulated separately under Section 227(b) from voice calls or texts, despite faxes being "communication via telephone" and therefore arguably "calls" under Plaintiff's (and some courts') advocated definition. Congress treated faxes differently because they impose unique harms voice calls do not. The same logic applies to texts: different communication technologies raise different concerns and thus necessitate different statutory rules. That Section 227(c) has not been amended to include texts to date is because Congress may have reasonably concluded "text messages do not present the same type of nuisance that phone calls do" and thus has intentionally excluded texts from Section 227(c). *Fashion Nova*, 2026 WL 847568, at *3. Where Congress has drawn such clear statutory lines—however imperfect they may seem in hindsight—courts are not free to redraw or question them. And at the end of the day, "the fact remains that Section 227(c)(5) of the TCPA [only] includes 'telephone call' and does not mention text messages or SMS messages." *Jones*, 792 F. Supp. 3d at 901. Bedrock statutory construction principles mandate that this Court apply that plain and ambiguous language as written.

Lastly, while Plaintiff may cite contrary decisions from other courts on this issue (including from courts in this Circuit), in which those courts declined to interpret "telephone call" to include only voice communications and/or seemingly expanded Section 227(c) to cover all

communications to and from a phone (which would improperly sweep in faxes or emails),[4] Adapt respectfully submits such decisions were wrongly decided and, notably, were all issued prior to the Seventh Circuit's recent well-reasoned decision in *Steidinger*. As the *Radvansky* court noted, "the reasoning underlying these contrary decisions is inherently flawed" for multiple reasons discussed above, and for many others, and thus should not be followed in this case. 2026 WL 456919 at *4 (criticizing various cases on this issue). *See also Stockdale*, 2026 WL 591842, at *3 (same).[5]

All told, while Plaintiff may believe that there are compelling reasons for the Court to expand Section 227(c) of the TCPA to reach the realities of today's communication technologies, only ***Congress*** can do so. Because text messages alone cannot support any Section 227(c) claim, Plaintiff's entire Complaint fails as a matter of law; and, since this is not a curable defect, it should thus be dismissed <u>with prejudice</u> under Rule 12(b)(6) on this basis. *See, e.g., Davis*, *supra*.

## II. <u>The Entire Complaint Should Also Be Dismissed Because Plaintiff Fails to Allege Sufficient Facts Supporting Other Essential Elements of His Two Asserted Claims.</u>

Beyond the threshold defect above, the Complaint fails on several more levels. In Count I, Plaintiff invokes the TCPA's National DNC Registry rules, which prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). In Count II, Plaintiff invokes the

---

[4] *See, e.g., Pero v. Brown-Daub,* 2026 WL 1747214, at *4-5 (E.D. Pa. June 17, 2026); *Newell v. Children's Dental Health Assocs., LLC*, 2026 WL 927378, at *1, *9 (E.D. Pa. Apr. 6, 2026); *Cole v. C/T Install America, LLC*, 2026 WL 916582, at *1 n.1 (E.D. Pa. March 23, 2026).

[5] As discussed in *Radvansky*, *James*, and *Stockdale*, other federal district courts that have erroneously found texts are covered by Section 227(c) either: (i) did not perform a proper statutory construction analysis consistent with recent Supreme Court rulings; (ii) gave considerable deference to the FCC's orders or opinions relating to Section 227(b) (a different section covering different phone technologies), in contravention of *Loper* and *McLaughlin*; (iii) relied heavily on modern dictionary definitions of "call" and "message" despite that Congress clearly did not intend to use the broadest possible construction of those terms; (iv) did not consider the modifying effect of the word "telephone" in Section 227(c); and/or (v) did not interpret the statute as it existed in 1991, as the Supreme Court requires. This Court should not make the same analytical missteps in this case.

"internal" DNC procedural rules, which govern (for example) what to do when a person who originally provided consent later revokes it and asks to be placed on the caller's internal DNC list. Those provisions, *inter alia,* require that any "person or entity" making a "call for telemarketing purposes" to "honor a residential subscriber's [internal DNC] request" made to them within a "reasonable time" and have policies and procedures in place meeting certain minimum standards. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d). But Plaintiff did not adequately plead such claims.

### A. Counts I and II Should Be Dismissed Because Plaintiff Fails to Plausibly Allege Receipt of an Actionable "Telephone Solicitation" or "Telemarketing" Call.

Firstly, it is well-settled that Section 227(c) of the TCPA, on its face, applies only "to telemarketing and solicitation calls," as opposed to all supposedly "unwanted" phone communications. *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, for Count I of the Complaint, Plaintiff must also plead facts suggesting his receipt of a "telephone solicitation," which is defined in the TCPA's related implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). For Count II, Plaintiff must likewise plausibly allege receipt of a "telemarketing" call, which has a substantially similar definition. *See* 47 C.F.R. § 64.1200(f)(13). In sum, the TCPA indisputably "is aimed [only] at calls that ***directly*** advertise [or, in the context of a DNC claim, directly solicit a purchase] and ***not*** 'calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future.'" *Jance v. Homerun Offer LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (quoting *Knutson v. Blue Light Sec., Inc*., 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)) (emphasis added).

To meet federal pleading standards in this regard, though, "[c]all recipients must do more than" baldly conclude "the calls in question were telephone solicitations" or "telemarketing" calls to plead this element of a Section 227(c) claim. *Weingrad v. Top Healthcare Options Ins. Agency Co.,*

2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). In other words, "[w]hile Plaintiff is not required to provide a line-by-line transcript of the telephone calls in question, he is still required to provide more than a conclusory statement that Defendant attempted to solicit" him to make a purchase of its products, to avoid a dismissal on this basis. *Bell v. Hawx Servs., LLC*, 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). Instead, "'further factual enhancement'" is needed to plead this essential element. *Gulden v. Consol. World Travel Inc.,* 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (quoting *Twombly*, 550 U.S. at 557). Federal district courts across the country have, therefore, consistently dismissed TCPA DNC claims at the pleadings stage under Rule 12 where, as here, the plaintiff merely relies on conclusory labels like "advertisement" or "solicitation" or the like, but omits additional requisite factual enhancement. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell*, 2025 WL 2533371, at *3–4 (citing *Gulden*, 2017 WL 3841491, at *3, *Andersen v. Nexa Mortg., LLC,* 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024), and *Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021)); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898, at *1 (Nov. 17, 2023); *Weingrad*, 2024 WL 4228149, at *4.

As applied in this case, Plaintiff did not come close to meeting the settled standards above. Instead, Plaintiff mostly offers conclusory labels as to the supposed "purpose" the subject communications (*see, e.g.,* Dkt. 1, ¶¶ 35, 48), which numerous courts have found are insufficient for any DNC claim to survive on this basis, without additional factual enhancement. *See, e.g., Gillam,* 2023 WL 2163775, at *3 (dismissing DNC claim on this basis where plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"); *Eggleston*, 2022 WL 886094, at *7 ("Plaintiff simply relies on conclusory labels such as 'advertisement' and

'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).); *Weingrad,* 2024 WL 4228149, at *3–4 (dismissing DNC claim where plaintiff "only plead[ed] [that] 'the purpose of the [subject] call was to sell the Plaintiff health insurance" and thus did "not plead a statutory violation without 'further factual enhancement'" as required by federal pleading standards); *Smith v. Getmehealthcare, LLC*, 2025 WL 3771271, at *2 (M.D. Fla. Dec. 31, 2025) (dismissing DNC claim on this basis where the complaint failed "to allege facts regarding the caller(s)' identities, the content of the calls, offers presented, or any other facts beyond speculation"). This Court should rule similarly here and likewise dismiss Plaintiff's entire Complaint on this additional basis.

The actual pled content of the texts tells a much different story. As noted above, ***none*** of the subject communications, on their face, encouraged Plaintiff to purchase, rent, or invest in anything; instead, they appear to relate to a ***purchase that already happened***—*i.e.,* they invited the recipient to review an "invoice" or referred to an "order" that already happened. *See* Dkt. 1, ¶¶ 24, 29. Therefore, Plaintiff has not alleged that he received an actionable "telephone solicitation" or "telemarketing" call as defined by the TCPA's governing regulations above, which further warrants dismissal of his entire Complaint. *See, e.g., Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *9 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026) (dismissing on this basis because "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all"); *Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) ("Because neither of the [subject communications] encouraged [the named plaintiff] to purchase, rent, or invest in anything, they do not constitute 'telephone solicitations' under the TCPA."); *Norman v. Northern Ill. Gas Co. Inc.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing where plaintiff failed to allege the

defendant "encouraged the purchase or rental or investment in any goods or services" despite multiple calls from the defendant with knowledge plaintiff was not the correct party); *Newhart v. Quicken Loans Inc*., 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016) (finding that calls made in response to an inquiry "[we]re not unsolicited telemarketing calls 'initiated' for the purpose of marketing a good or service."); *see also Aderhold v. car2go N.A. LLC*, 668 F.App'x 795, 796 (9th Cir. 2016) (a message relating to an ongoing transaction deemed not an actionable telephone solicitation) (citing *In re Rules & Regs. Implementing the TCPA*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006)); *Less v. Quest Diagnostics Inc.,* 2021 WL 266548, at *1–2 (N.D. Ohio Jan. 26, 2021) ("[M]erely providing information about an available service are not implicated by the [TCPA].").[6]

### B. <u>Count I Should Also Be Dismissed Because Plaintiff Failed to Plausibly Allege Who Registered the Subject Phone Number on the National DNC Registry.</u>

As to Count I of the Complaint in particular, the TCPA's implementing regulations Plaintiff invokes also expressly prohibit initiating telephone solicitations only to a "residential telephone subscriber ***who has registered his or her telephone number***" on the National DNC Registry, as opposed to just anyone. 47 C.F.R. § 64.1200(c)(2) (emphasis added). As other courts have found, a plain reading of the unambiguous language of this regulation, which again this Court <u>must</u> apply as written under binding federal precedent when ruling on this motion (*see King* and *Kirtz*, *supra*), requires that Plaintiff plausibly plead that he ***himself*** registered the number on which he allegedly received the subject texts on the Registry. *See, e.g., Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023) (dismissing, in part, on this basis); *Rombough v. Robert D. Smith*

[6] Additionally, under the TCPA, a "telephone solicitation" expressly "does ***not*** include a call or message [t]o any person with that person's express invitation or permission, [or] [t]o any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(5) & (f)(15) (emphasis added). Here, Plaintiff notably fails to plead whether he had an established business relationship with Adapt. *See generally* Dkt. 1. As such, he has not plausibly alleged that he received a "telephone solicitation" under Section 227(c). *See, e.g., Gillam,* 2023 WL 2163775, at *3 (dismissing DNC claim, in part, on his basis). This omission further dooms Count I to a dismissal.

*Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing this issue, dismissing *with prejudice* on this basis, and holding the "plain [statutory] language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else"). That plain reading is logical and harmonizes with the statutory language itself, in which Congress authorized the creation of a registry of "residential subscribers ***who object*** to receiving telephone solicitations." 47 U.S.C. § 227(c)(3) (emphasis added).

As applied here, Plaintiff does not indicate ***who*** registered the phone number upon which he received the at-issue communications, and only alleges that it "is registered" on the Registry and was "so registered at least two years" prior to his receipt of the text. *See* Dkt. 1, ¶ 18. This inartful pleading suggests the number "could have been registered by previous owners of th[e] numbers rather than by Plaintiff[.]" *Rogers*, 2023 WL 2646468, at *4. Moreover, dismissal is particularly appropriate in this instance given that "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [his] own number[] on the DNC list[.]" *Id*. Count I of Plaintiff's Complaint therefore fails for this additional reason.

### C. Count II of the Complaint Should Also Be Dismissed Because Plaintiff Failed to Plausibly Allege a Violation of the TCPA's "Internal" DNC Regulations.

As to Plaintiff's claim in Count II, courts have widely recognized that "[t]he 'violation of the [internal DNC] regulations' is the initiation of the phone call without having implemented the minimum procedures[.]" *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009). In other words, the TCPA's internal DNC regulations do <u>not</u> prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *GVN Michigan*, 561 F.3d at 632). Instead, the operative question here is whether the caller ***implemented and maintained*** such

procedures in the first instance prior to making the alleged violative calls (or here texts), and not merely whether additional calls or texts were received after asking to be put on a caller's internal DNC list, or for any other reason proscribed by the internal regulations. *See GVN*, 561 F.3d at 632.

For example, Plaintiff could not maintain a separate cause of action under the internal DNC regulations solely on the basis of an alleged failure to provide a copy of an internal DNC policy on demand, which is one of the enumerated internal procedural requirements under the regulations. *See, e.g., Hamilton v. Voxeo Corp.,* 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009) (granting summary judgment on this basis, applying inter alia, *GVN*). Rather, Plaintiff may "only recover for a call made at a time when [Adapt] did not have such a policy in place" and for no other reason. *Id. See also Barr v. Macy's.com, LLC*, 2023 WL 6393480, at *4–6 (S.D.N.Y. Sept. 29, 2023) (dismissing internal DNC claim, holding the "mere fact" a plaintiff receives a call after an internal DNC request is not a violation) (citing *Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017)). Failure to adequately allege this warrants dismissal under Rule 12(b)(6). *See, e.g., Hulett v. EYEBUYBIRECT, 2025* WL 1677071, at *5-7 (N.D.N.Y. June 13, 2025) (citing, *inter alia, Barr* and *Simmons*); *Laccinole v. Rocket Mortg., LLC*, 609 F. Supp. 3d 68, 73 (D.R.I. 2022); *Laccinole v. Appriss, Inc*., 453 F. Supp. 3d 499, 506 (D.R.I. 2020). And consistent with federal pleading standards of course, it is not enough for any plaintiff to "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" to avoid dismissal. *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012).

This accepted analytical approach to evaluating the facial sufficiency of internal DNC claims, with the focus properly being on the implementation and maintenance of the procedures themselves rather than on the alleged communications, is in accord with the plain language of the TCPA's internal DNC regulations as well as with how those regulations work in practice. That is because,

*inter alia*, (i) the internal DNC regulations do not require perfect internal practices and procedures, but rather only require implementing "reasonable" ones (meaning that unintentional errors or technical glitches are not a violation); (ii) the regulations simply require businesses to "honor a residential subscriber's [internal DNC] request" within a "reasonable time" from the date of the request, not to exceed 10 business days; and (iii) internal DNC requests need only be honored "within a few days or weeks" and not immediately. *See* 47 U.S.C. § 227(c)(5)(C); 47 C.F.R. § 64.1200(d)(3); *In Re Rules & Regs. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 94 (2003).

As applied here, Plaintiff largely regurgitates the statutory text about Adapt's purported lack of procedures for Count II without any additional factual enhancement; and he rests his claim squarely on his conclusory allegations that he allegedly received texts after making a "stop" request, which again is not a violation of the internal DNC regulations by itself as many courts have held. *See, e.g.,* Dkt. 1, ¶¶ 30, 77. Yet Plaintiff does not allege, for example, that he requested a copy of the caller's internal DNC policy—which he could have done, per the regulations. *See* 47 C.F.R. § 64.1200(d)(1). Doing so might have given him a minimal factual basis to allege whether the callers had internal procedures in place before he was texted. *See Barr,* 2023 WL 6393480, at *5. This omission is telling. Regardless, Plaintiff must do more than "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" (as he did) to avoid dismissal on this basis. *Bailey*, 867 F. Supp. 2d at 842. Plaintiff's failure to do so is further fatal to Count II.

### D. Plaintiff Failed to Plausibly Allege a "Knowing" or "Willful" TCPA Violation in Support of His Request for Treble Damages.

Plaintiff also purports to seek treble damages under the TCPA, to the extent that any violation was "knowing" or "willful," but pleads zero facts beyond his naked conclusions in support of this. Dkt. 1, ¶¶ 73, 78. Courts have recognized that such faulty allegations are insufficient and cannot survive dismissal under Rule 12(b)(6), either. *See, e.g., Canary v.*

*Youngevity Int'l, Inc.*, 2019 WL 1275343, at *9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations because inter alia it "consist[ed] of nothing more than bare-bones legal conclusions"); *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true."). This Court should too, and thus it should dismiss Plaintiff's requests for treble damages (at the minimum) under Rule 12(b)(6) for not meeting federal pleading standards.

## III. <u>The Entire Complaint Should Also Be Dismissed Because Plaintiff Fails to Plausibly Allege a Theory of Liability Under the TCPA (*i.e.*, Direct or Vicarious Liability).</u>

Plaintiff also does not sufficiently plead a theory of liability under the TCPA. This failure is also fatal to both claims. As noted above, one of two theories of liability must be adequately pled in accordance with federal pleading standards in <u>every</u> TCPA case to avoid dismissal under Rule 12(b)(6)—direct liability or vicarious liability. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Landy v. Nat. Power Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (each dismissing on one or both of these bases). This rule means that, "for a person to 'make' [or 'initiate'] a call under the TCPA," the defendant "must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call"—and of course there must be actual well-pled ***facts*** supporting such allegations. *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019).[7]

[7] Though the terms are used somewhat interchangeably in the statute and in case law, federal courts evaluating and dismissing conclusory direct TCPA liability claims have uniformly held that the terms "make" or "initiate" in this context mean to "physically" place a phone call or send a text directly.

Further, failure to plead facts supporting these theories warrants dismissal of any TCPA claim in its entirety at the pleadings stage, regardless of whether the plaintiff pled facts supporting other essential elements of the claim(s) asserted. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject communications]—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the claims.); *Tuso v Lennar Corp.,* 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) ("Because [plaintiff] has failed to allege that the Defendant is liable—either directly or vicariously—his [TCPA] claims must be dismissed."). Such is true here.

Indeed, federal law is clear that direct TCPA liability applies ***only*** to persons or entities that "initiate" or "make" telemarketing calls, which means to actually "***physically place***" the calls at issue directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added). *Accord Direct Building Supplies*, 2021 WL 4623275, at *3 (dismissing on this basis where, as here, the plaintiff "provide[d] no details specifying how [plaintiff] knew that [the defendant] in fact [physically] placed these calls" and citing, *inter alia*, *Aaronson,* 2019 WL 8953349, at *2-3 (holding that, "at the pleadings stage, [a] plaintiff must allege facts to support his [or her] conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that [CHW] actually, physically initiated the telephone calls at issue" there)); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing, holding TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for each call" or text message at issue).

Conversely, direct TCPA liability "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing on this basis, holding that "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf"); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis, holding TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal under Rule 12(b)(6)).

Similarly, "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) ("Plaintiff argues that because he received a call 'on behalf of' [defendant], [defendant] is directly liable under the TCPA. Plaintiff is mistaken."). Rather, logically and legally, there must be a "direct connection between a person or entity and the making of a call" for "direct liability" to attach. 30 FCC Rcd. at 7980.

Furthermore, to meet federal pleading requirements in a TCPA case, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call" without any additional factual enhancement—as Plaintiff did—"is ***not*** sufficient to allege a [direct] TCPA [liability] claim" and avoid a dismissal on this basis. *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (emphasis added). Consequently, district courts throughout this Circuit and nationally have routinely dismissed such ill-pled TCPA claims, like Plaintiff's here, on direct liability grounds. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3 (dismissing where plaintiff failed to plead sufficient supporting

facts, citing *inter alia Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing on this basis, holding that "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" at the pleadings stage); *Rogers,* 2023 WL 2646468, at *5 (dismissing DNC claim on this basis where "[p]laintiffs ha[d] not pleaded any ***facts*** supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Cosenza v. Nice North America, LLC*, 2026 WL 2248829, at *5 (C.D. Ill. Aug. 4, 2026) (dismissing similar TCPA complaint brought by some of the same counsel representing Plaintiff on this basis, where like here "[t]he only allegation suggesting direct liability [pled in the complaint was] 'Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff'" and rejecting plaintiff's argument that "the fact that the representative provided him the Defendant's website and the prerecorded message promoted products associated with Defendant renders direct liability plausible" without more facts); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though the plaintiff was somehow "informed" by the alleged caller that "the [subject] call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls" in the complaint); *Doyle*, 2023 WL 3984951, at *4–6 (allegations calls were "from Defendant, its employees and/or agents" deemed insufficient); *Belleville v. Florida Insur. Services, Inc*., 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part*, 2024 WL 2794108 (May 31, 2024) (dismissing, even though caller said they were calling "from" the defendant and provided a link to its website, where plaintiff alleged "in conclusory fashion that Defendant was directly involved in making" the subject calls).

The foregoing analytical approach—where courts do not focus on pled call content alone when evaluating the facial sufficiency of allegations supporting TCPA liability theories—represents a proper application of federal pleadings standards in TCPA cases, which federal courts across the country have employed for decades. That is because courts correctly recognize that, today, companies often hire third parties to handle their outbound communications. Indeed, calls (or here text messages) from a third-party vendor would naturally identify the defendant by name or mention its products or services, which is the whole point of using a vendor, and thus may have originated "from" the defendant in a technical sense. But such communications are not "physically placed" (or made, sent, initiated, etc.) by the defendant itself directly to the plaintiff, which is what matters in this context, and thus cannot support direct liability as a matter of law. *See* 28 FCC Rcd. at 6583.

Here, it is apparent that Plaintiff has just adopted the same flawed "either/or" approach that countless federal courts have firmly rejected as insufficient to plausibly allege any TCPA liability theory, rather than pleading actual facts as required. In fact, Plaintiff merely avers, in a wholly conclusory fashion, that "Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf" placed the subject text messages, or the like. Dkt. 1, ¶ 72; *see also id*. ¶¶ 55, 68, 74 (reflecting nearly identical or substantially similar allegations referring to Adapt and/or third parties acting "on behalf" of Adapt). In other words, ***Plaintiff contends that either Adapt <u>and/or</u> countless unidentified third parties sent these texts.*** Yet, courts have found that such conclusory and equivocating allegations are "woefully insufficient to state a claim of any sort" under basic federal pleading standards. *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013).

Such is particularly true when it comes to properly pleading TCPA liability theories, as the many directly on-point authorities cited above (among many others) dismissing similarly ill-pled

complaints on these grounds all show. *See, e.g., Cosenza* and *Doyle*, *supra*. *See also Wilson v. MEDVIDI Inc.,* 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing substantially similar complaint filed by the same counsel representing Plaintiff for failing to properly allege a TCPA liability theory, holding: "Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, [], the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent. Similarly, while alleging that 'Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA,' [] the complaint fails to allege any agency relationship or identify any third parties that could have sent the text messages. Such 'unadorned labels' are insufficient as a matter of law….") (emphasis added, citation omitted); *Dobronski v. Russo,* 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Melito v. Am. Eagle Outfitters, Inc*., 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing on this basis, finding that "Plaintiffs' conclusory assertions [the defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement," and holding that "none of plaintiffs' factual allegations, even if accepted as true, establishe[d] direct liability on [defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement, of a text message"). This Court should rule similarly and dismiss the Complaint for failing to properly allege a direct liability theory.

To the extent Plaintiff was also attempting to plead a vicarious TCPA liability theory, he also failed. Other than using legal buzzwords (e.g., "agent") which are not entitled to a presumption of truth under *Iqbal*/*Twombly*, his Complaint contains zero factual allegations supporting any

inference that Adapt was in a common law agency relationship with any third party that texted him, as is required to plead vicarious TCPA liability. Therefore, his Complaint should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc.,* 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (dismissing where plaintiff did not plead allegations supporting his vicarious TCPA liability theories); *see also Landy*, 2021 WL 3634162, at *4 (dismissing on this basis and holding that "[a]n entity cannot be held [vicariously] liable under the TCPA 'merely because they stand to benefit from the call'") (citations omitted).

Lastly, perhaps the "death knell" to Plaintiff's efforts to state any plausible TCPA liability theory here is that he incredibly suggests in his pleading that he needs "discovery" to properly do so. *See, e.g.,* Dkt. 1, ¶ 72. The Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Moreover, the well-recognized purpose of Rule 12(b)(6) is to "streamline [ ] litigation by dispensing with needless discovery and factfinding," *see Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989), and thus Plaintiff must file a complaint that states a plausible claim before he is entitled to discovery, *see Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010). And as one district court dismissing a similarly-defective TCPA complaint on this basis aptly held:

> As master[s] of [their] Complaint, it is [a TCPA plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc.,* 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015). *See also Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the

mandates of *Iqbal* and *Twombly*"). Put in context of this case, Plaintiff's pled suggestions in his Complaint that he "needs discovery to confirm who called him and how that person is related to" Adapt reveals he is merely "on an impermissible fishing expedition" and is not pleading actual facts in accordance with *Iqbal*/*Twombly*; and it further confirms he actually does "not know who called" him and thus that he has not adequately pled ***any*** TCPA liability theory against Adapt in this case, as required. *Scruggs*, 2020 WL 9348208, at *6–7, 10 (dismissing on these bases).

* * *

All told, Plaintiff's failure to properly allege a plausible direct or vicarious TCPA liability theory in this case is not some minor pleading defect to be sorted out in discovery. Rather, as shown above, this is a critical legal distinction that myriad courts have found must first be properly pled in every case before subjecting defendants to discovery, liability, and potential statutory damages—all of which can be costly and potentially ruinous, especially in class actions like this. As Plaintiff failed to do so here, his entire Complaint should be dismissed under Rule 12(b)(6) on these grounds too.

## CONCLUSION

For all of the reasons above, the entire Complaint should be dismissed with prejudice.

*/s/ Steven C. Tolliver, Jr.*
FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(*Pro Hac Vice* to be requested)
MANATT, PHELPS & PHILLIP, LLP
151 N, Franklin Street, Suite 2600
Chicago, IL 60606

Telephone: 312-529-6300
jmcguinness@manatt.com
pheeringa@manatt.com

*Counsel for Defendant AdaptHealth Corp.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: August 17, 2026

*/s/ Steven C. Tolliver, Jr.*
STEVEN C. TOLLIVER, JR.

*Counsel for Defendant AdaptHealth Corp.*