**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DMITRY ZINGER, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAPTHEALTH CORP.,<br><br>Defendant. | CASE NO. 2:26-cv-04287-JMY<br><br>CLASS ACTION |

# DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS


INTRODUCTION ........ 1

RELEVANT ALLEGATIONS ........ 3

APPLICABLE LEGAL STANDARDS ........ 4

ARGUMENT ........ 4

I. All of Plaintiff's Claims Fail as a Matter of Law, and Thus His Entire FAC Should Be Dismissed With Prejudice Under Rule 12(b)(6), Because The Plain and Unambiguous Language of Section 227(c) of the TCPA Does Not Apply to Text Messages. ........ 5

II. The Entire FAC Should Also Be Dismissed Because Plaintiff Fails to Allege Sufficient Facts Supporting Other Essential Elements of His Two Asserted TCPA Claims. ........ 14

A. Counts I and II Should Be Dismissed Because Plaintiff Fails to Plausibly Allege Receipt of an Actionable "Telephone Solicitation" or "Telemarketing" Call. ........ 15

B. Count II of the FAC Should Also Be Dismissed Because Plaintiff Failed to Plausibly Allege a Violation of the TCPA's "Internal" DNC Regulations. ........ 19

III. The Entire FAC Should Also Be Dismissed Because Plaintiff Fails to Plausibly Allege a Theory of Liability Under the TCPA (i.e., Direct or Vicarious Liability). ........ 21

IV. Any Dismissal Should Be With Prejudice. ........ 30

## TABLE OF AUTHORITIES

### CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ....................21, 22

*Andersen v. Nexa Mortg., LLC*,
2024 WL 3762098 (C.D. Cal. Aug. 12, 2024)....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4, 29

*Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*,
708 F.3d 737 (6th Cir. 2013) ....................12

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012)....................20, 21

*Bank v. Alleviate Tax, LLC*,
2024 WL 1332635 (E.D.N.Y. Mar. 28, 2024)....................25

*Barnes v. SunPower Corp.*,
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023)....................23, 28

*Barr v. Macy's.com, LLC*,
2023 WL 6393480 (S.D.N.Y. Sept. 29, 2023)....................19, 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4, 15

*Bell v. Hawx Servs., LLC*,
2025 WL 2533371 (E.D. Cal. Sept. 3, 2025)....................15, 16

*Belleville v. Florida Insur. Services, Inc.*,
2024 WL 2342337 (S.D. Fla. May 23, 2024), *report and rec. adopted in part*, 2024 WL 2794108 (May 31, 2024) ....................24, 28

*Blow v. Bijora, Inc.*,
191 F. Supp. 3d 780 (N.D. Ill. 2016) ....................7

*Bocker v. Hartzell Engine Techs., LLC*,
2023 WL 415792 (D. Del. Jan. 26, 2023)....................27

*Bonner v. Justia Inc.*,
2019 WL 3892858 (D.N.J. Aug. 19, 2019) ....................4

*Bridges v. Torres*,
809 F.App'x 69 (3d Cir. 2020)....................4

*Brownlee v. Allstate Ins. Co.*,
2021 WL 4306160 (N.D. Ill. Sept. 22, 2021) ....................23

*Card v. R.J. Reynolds Tobacco Holdings, Inc.*,
2026 WL 2673068 (M.D.N.C. Sept. 3, 2026)....................6, 9, 11, 13

*Charvat v. DFS Servs. LLC*,
781 F. Supp. 2d 588 (S.D. Ohio 2011) ....................19

*Charvat v. GVN Michigan, Inc.*,
561 F.3d 623 (6th Cir. 2009) ....................19

*Cole v. C/T Install America, LLC*,
2026 WL 916582 (E.D. Pa. March 23, 2026)....................14

*Conrad v. Hart Consumer Products*,
2026 WL 2741623 (N.D. Ala. Sept. 16, 2026)....................5, 8, 12

*Cornell Univ. v. Illumina, Inc.*,
2012 WL 1885129 (D. Del. May 23, 2012), *report and rec. adopted,* 2012 WL 2564888 (June 29, 2012) ....................4

*Cosenza v. Nice North America, LLC*,
2026 WL 2248829 (C.D. Ill. Aug. 4, 2026)....................24, 26, 27

*Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*,
450 F.3d 130 (3d Cir. 2006)....................4

*Dahdah v. Rocket Mortgage LLC*,
2023 WL 5941730 (E.D. Mich. Sept. 12, 2023)....................16

*Davis v. CVS Pharm., Inc.*,
797 F. Supp. 3d 1270 (N.D. Fla. 2025).................... passim

*Davis v. Michigan Dept. of Treasury*,
489 U.S. 803 (1989)....................13

*Dobronski v. Russo*,
2024 WL 4363118 (E.D. Mich. Sept. 30, 2024)....................26

*Doyle v. GoHealth, LLC*,
2023 WL 3984951 (D.N.J. Mar. 30, 2023)....................21, 24, 26

*Doyle v. Matrix Warranty Sols., Inc.*,
2023 WL 4188313 (D.N.J. June 26, 2023) ....................21

*Dukes v. DirecTV LLC*,
2016 WL 11956532 (N.D. Tex. Nov. 7, 2016)....................18

*Eggleston v. Reward Zone USA LLC*,
2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ....................16

*El-Sayed v. Naturopathica Holistic Health, Inc.*,
2025 WL 2997759 (M.D. Fla. Oct. 24, 2025) ....................6, 10, 12

*Facebook, Inc. v. Duguid*,
592 U.S. 395 (2021)....................6

*FCC v. AT&T Inc.*,
562 U.S. 397 (2011)....................13

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)....................12

*Frame v. Cal-W. Reconveyance Corp.*,
2011 WL 3876012 (D. Ariz. Sept. 2, 2011)....................30

*Frank v. Cannabis & Glass, LLC*,
2019 WL 4855378 (E.D. Wash. Oct. 1, 2019)....................24

*Gillam v. Reliance First Capital, LLC*,
2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023)....................16

*Greene v. Select Funding, LLC*,
2021 WL 4926495 (C.D. Cal. Feb. 5, 2021)....................16

*Guglielmo v. CVS Pharmacy*,
2021 WL 3291532 (D. Conn. Aug. 2, 2021)....................18

*Gulden v. Consol. World Travel Inc.*,
2017 WL 3841491 (D. Ariz. Feb. 15, 2017)....................15, 16, 21

*Hamilton v. El-Moussa*,
2020 WL 2614625 (C.D. Cal. Feb. 10, 2020)....................27

*Horton v. Molina Healthcare of Texas, Inc.*,
2026 WL 490216 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026)....................17

*Hulce v. Zipongo Inc.*,
132 F.4th 493 (7th Cir. 2025)....................18

*Hulett v. EYEBUYBIRECT*,
2025 WL 1677071 (N.D.N.Y. June 13, 2025)....................19

*Hurley v. Messer*,
2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018)....................29

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
2015 WL 13648356 (W.D. Ark. June 16, 2015)....................29

*In re Dish Network, LLC*,
2013 WL 1934349, 28 FCC Rcd. 6574 (2013)....................22, 23

*In re Rules & Regs. Implementing the TCPA of 1991*,
18 FCC Rcd. 14014 (2003)....................7, 20

*In re Rules & Regs. Implementing the TCPA*,
30 FCC Rcd. 7961 (2015)....................4, 23

*Irvin v. Sonic Indust. Serv., LLC*,
2026 WL 1098403 (N.D. Ga. Apr. 20, 2026)....................6, 11

*James v. Smarter Contact, Inc.*,
2026 WL 879244 (M.D. Fla. Mar. 31, 2026)....................6, 12, 13

*Jance v. Homerun Offer LLC*,
2021 WL 3270318 (D. Ariz. July 30, 2021)....................19

*Katz v. Caliber Home Loans, Inc.*,
2023 WL 5311488 (N.D. Tex. Aug. 17, 2023)....................28

*King v. Burwell*,
135 S.Ct. 2480 (2015)....6

*Kirtz v. Trans Union LLC*,
46 F.4th 159 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42 (2024)....6

*Knutson v. Blue Light Sec., Inc.*,
2018 WL 1172611 (S.D. Cal. Mar. 6, 2018)....19

*Kucana v. Holder*,
558 U.S. 233 (2010)....11

*Laccinole v. Rocket Mortg., LLC*,
609 F. Supp. 3d 68 (D.R.I. 2022)....19

*Landy v. Nat. Power Sources, LLC*,
2021 WL 3634162 (D.N.J. Aug. 17, 2021)....21

*Less v. Quest Diagnostics Inc.*,
2021 WL 266548 (N.D. Ohio Jan. 26, 2021)....18

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)....6, 8

*Maldonado-Rodriguez v. Citibank, N.A.*,
2013 WL 350814 (N.D. Ind. Jan. 28, 2013)....26

*Mann v. Brenner*,
375 F. App'x 232 (3d Cir. 2010)....29

*Matthews v. Senior Life Ins. Co.*,
2025 WL 1181789 (E.D. Va. Apr. 22, 2025)....25

*McGonigle v. Pure Green Franchise Corp.*,
2026 WL 111338 (S.D. Fla. Jan. 15, 2026)....11

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
606 U.S. 146 (2025)....8

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (N.D. Cal. Mar. 28, 2018)....28

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)....26

*Metzler v. Pure Energy USA LLC*,
2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023)....23

*Morse v. Lower Merion Sch. Dist.*,
132 F.3d 902 (3d Cir. 1997)....4

*Murphy v. DCI Biologicals Orlando, LLC*,
2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015)....17

*Murray v. Choice Energy, LLC*,
2015 WL 4204398 (S.D. Ohio July 10, 2015)....28

*Neitzke v. Williams*,
490 U.S. 319 (1989) .......... 29

*Nelums v. Mandu Wellness, LLC*,
2023 WL 5607594 (D.N.M. Aug. 30, 2023) .......... 22

*Newell v. Children's Dental Health Assocs., LLC*,
2026 WL 927378 (E.D. Pa. Apr. 6, 2026) .......... 14

*Newhart v. Quicken Loans Inc.*,
2016 WL 7118998 (S.D. Fla. Oct. 12, 2016) .......... 18

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 11

*Norman v. Northern Ill. Gas Co. Inc.*,
2014 WL 184774 (N.D. Ill. Jan. 16, 2014) .......... 17

*Pascal v. Agentra, LLC*,
2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) .......... 22

*Pero v. Brown-Daub*,
2026 WL 1747214 (E.D. Pa. June 17, 2026) .......... 14

*Peters v. Hollie*,
2019 WL 1556661 (E.D. Cal. Apr. 10, 2019) .......... 3

*Radvansky v. 1-800-FLOWERS.COM, Inc.*,
2026 WL 456919 (N.D. Ga. Feb. 17, 2026) .......... passim

*Redden v. Smith & Nephew, Inc.*,
2010 WL 2944598 (N.D. Tex. July 26, 2010) .......... 4

*Richards v. Fashion Nova, LLC*,
2026 WL 847568 (S.D. Ind. Mar. 26, 2026) .......... 6, 10, 12

*Richards v. Shein Distrib. Corp.*,
2026 WL 847584 (S.D. Ind. Mar. 26, 2026) .......... 6

*Roberts v. Sea-Land Servs., Inc.*,
566 U.S. 93 (2012) .......... 12

*Rogers v. Assurance IQ, LLC*,
2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) .......... 24

*Rogers v. Interstate Nat'l Dealer Servs. Inc.*,
2020 WL 4582689 (N.D. Ohio Aug. 10, 2020) .......... 23

*Rush v. Selectquote Ins. Serv., Inc.*,
2026 WL 2495598 (W.D. Mo. July 30, 2026) .......... 6, 13

*Santiago v. Warminster Township*,
629 F.3d 121 (3d. Cir. 2010) .......... 4

*Scruggs v. CHW Grp., Inc.*,
2020 WL 9348208 (E.D. Va. Nov. 12, 2020) .......... 24, 25, 28, 29

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) ..........22

*Simmons v. Charter Commc'ns, Inc.*,
222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017) ..........19

*Smith v. Direct Building Supplies, LLC*,
2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ..........21, 22, 24

*Smith v. Getmehealthcare, LLC*,
2025 WL 3771271 (M.D. Fla. Dec. 31, 2025) ..........16

*Smith v. Vision Solar LLC*,
2020 WL 5632653 (E.D. Pa. Sept. 21, 2020) ..........21

*Steidinger v. Blackstone Med. Servs.*,
182 F.4th 532 (7th Cir. 2026) .......... passim

*Stockdale v. Skymount Prop. Grp., LLC*,
2026 WL 591842 (N.D. Ohio Mar. 3, 2026) ..........6, 7, 12, 14

*Sw. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ..........11

*Warden v. Woods Servs.*,
2020 WL 1289194 (E.D. Pa. Mar. 17, 2020) ..........30

*Warnick v. Dish Network LLC*,
301 F.R.D. 551 (D. Colo. 2014) ..........1, 15

*Weingrad v. Top Healthcare Options Ins. Agency Co.*,
2024 WL 4228149 (E.D. Pa. Sept. 17, 2024) ..........15, 16

*Wick v. Twilio Inc.*,
2017 WL 2964855 (W.D. Wash. July 12, 2017) ..........23

*Zarichny v. Complete Payment Recovery Servs., Inc.*,
80 F. Supp. 3d 610 (E.D. Pa. 2015) ..........28

**STATUTES**

47 U.S.C. § 227(a)(4) ..........10, 11

47 U.S.C. § 227(b) .......... passim

47 U.S.C. § 227(c) .......... passim

47 U.S.C. § 227(e) ..........9, 10, 11

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47 U.S.C. § 227(e)) ..........9, 10

**OTHER AUTHORITIES**

47 C.F.R. § 64.1200(c) ..........7

47 C.F.R. § 64.1200(c)(2) ..........1, 14

47 C.F.R. § 64.1200(d) ..........1, 15, 20, 21

47 C.F.R. § 64.1200(f)(13) ....................................................................................................15
47 C.F.R. § 64.1200(f)(15) ....................................................................................................15
S. Rep. No. 102-178 (1991) ....................................................................................................12

**RULES**

Fed. R. Civ. P. 12(b)(6).................................................................................................... passim

## INTRODUCTION

In his First Amended Complaint (*see* Dkt. 8, "FAC"), Plaintiff Dmitry Zinger ("Plaintiff") conclusorily alleges, without sufficient requisite supporting facts, that Defendant AdaptHealth Corp. ("AdaptHealth") violated certain "Do-Not-Call ("DNC") provisions of the federal Telephone Consumer Protection Act, (the "TCPA"). In particular, in Count I of the FAC, Plaintiff claims that AdaptHealth violated one of the TCPA's implementing regulations (*i.e.,* 47 C.F.R. § 64.1200(c)(2)) relating to certain telephone calls made to numbers properly registered on the National DNC Registry. In Count II, Plaintiff claims that AdaptHealth violated the TCPA's "internal" DNC procedural regulations (*i.e.,* 47 C.F.R. § 64.1200(d)) governing policies and procedures for recognizing requests to "stop" calling. The private cause of action afforded to consumers under the statute for purported violations of either regulation can be found in 47 U.S.C. § 227(c)(5), which on its face <u>only</u> restricts certain kinds of "telephone calls" (specifically, "telemarketing and solicitation calls"[1]), and not all forms of unwanted telephone communications.

Yet, Plaintiff's FAC still bases his claims against AdaptHealth <u>exclusively</u> on three supposed "unsolicited text telemarketing messages" (not telephone calls)—none of which offered to sell him anything on their face—that he vaguely avers were either sent by AdaptHealth itself and/or on its "behalf" by countless unidentified third parties to his cell phone without his consent. *See, e.g.,* Dkt. 8, ¶¶ 17-18, 31-34, 38, 44, 46, 48, 75, 86, 95. At bottom, and notwithstanding his amendments, these allegations are inadequate and ripe for dismissal under Fed. R. Civ. P. 12(b)(6).

While Plaintiff's FAC still lacks plausible factual support, its primary fatal flaw remains a legal one. Specifically, many federal district courts and one Court of Appeals (so far) have done a thorough analysis of this issue, and have correctly concluded that, per the plain and unambiguous

[1] *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014).

language of the relevant statutory text (which is dispositive), the private cause of action afforded under Section 227(c)(5) of the TCPA can ***only*** be invoked for unlawful "***telephone calls***" and not just for any form of telephonic communication—such as modern-day text messages, which did not exist when that provision was enacted in 1991. As both of Plaintiff's claims against AdaptHealth rest entirely on text messages, they were doomed to fail as a matter of law from the start.

Even if *arguendo* Plaintiff had stated a legally cognizable TCPA claim (and he did not), his entire ill-pled FAC should nevertheless be dismissed under Rule 12(b)(6) for several reasons.

**First**, Plaintiff has not adequately pled facts, in accordance with bedrock federal pleading standards, supporting several essential elements of his TCPA DNC claims, which further warrants dismissal of his entire FAC. In this regard, despite having amended, Plaintiff still omits sufficient non-conclusory facts supporting a plausible inference, *inter alia*, that: (i) he received an actionable "telephone solicitation" or "telemarketing" call as those terms are defined by the TCPA's related implementing regulations; or (ii) AdaptHealth lacked internal DNC procedures prior to the transmission of the alleged text messages (which is the only possible basis for such a claim).

**Second**, it is well-settled that, regardless of the other elements of their claims, all TCPA plaintiffs must first plead plausible facts in compliance with federal pleading standards supporting a theory of liability (*i.e.*, direct or vicarious liability) against the defendant, or they face a complete dismissal of any TCPA claim under Rule 12(b)(6). Applying this steadfast rule here requires Plaintiff to plausibly allege, with sufficient non-conclusory factual support, that AdaptHealth: (i) itself, and not a third party, "physically" sent each of the subject communications directly to him (*i.e.*, direct liability), or (ii) had a common law agency relationship with a third party who did physically send the subject texts (*i.e.*, vicarious liability). At the same time, it is equally well-established that merely parroting the statutory text or case law, taking an equivocating "either/or"

approach, and concluding that the "defendant and/or its agents" placed or initiated the subject communications is insufficient to plead such theories, without more. As Plaintiff still takes the same flawed pleading approach even after amending, his entire FAC fails for this reason, as well.

Moreover, since none of Plaintiff's factual amendments can cure the fundamental legal defect that text messages alone cannot support any DNC claim, and since his amendments did not cure all the fatal pleading defects outlined in AdaptHealth's initial motion to dismiss as to his original complaint (*see generally* Dkt. 6-1), his entire FAC should be dismissed with prejudice.

## RELEVANT ALLEGATIONS

In sum, Plaintiff's FAC is just as fatally flawed as its defective predecessor. Indeed, while Plaintiff removed some references to third parties that were in his original complaint for his FAC,[2] he did not remove them all. As such, at its core, Plaintiff's FAC still conclusorily alleges that either AdaptHealth itself and/or unidentified third parties acting on "behalf" of AdaptHealth violated the TCPA's DNC provisions by sending "unsolicited telemarketing text messages" to his cell phone number without his consent or after he revoked it. *See, e.g.,* Dkt. 8, ¶¶ 17-18, 31-34, 38, 44, 46, 48, 55, 75, 86, 95. Plaintiff does not allege having received any "telephone calls" from or on behalf of AdaptHealth, however. Moreover, while Plaintiff still baldly concludes that the subject text "messages were sent for the purpose of encouraging the purchase of Defendant's products and services," and while he added other similarly conclusory statements to his FAC characterizing the subject texts as "telemarketing" or "solicitations" or the like, none of the subject texts on their face actually offered to sell Plaintiff any goods or services, per the screenshots in the FAC; instead, they appear to relate to an ongoing or previous transaction or order. *See, e.g., id.,* ¶¶ 30, 32, 48, 52, 53.

[2] *See, e.g.,* Dkt. 1, ¶ 72. Federal courts may properly "look to prior pleadings [in the present case] in determining the plausibility of [Plaintiff's] amended complaint" when ruling on a Rule 12(b)(6) motion. *Peters v. Hollie*, 2019 WL 1556661, at *5, n.3 (E.D. Cal. Apr. 10, 2019) (citations omitted).

## APPLICABLE LEGAL STANDARDS

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) where, as here, a plaintiff fails to plead a cognizable legal theory or to sufficiently plead facts supporting one. *See, e.g., Bonner v. Justia Inc*., 2019 WL 3892858, at *3 (D.N.J. Aug. 19, 2019) (citation omitted). As to the latter, a "bare assertion" or "conclusory allegation[s]" will not suffice to avoid a dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while this Court must generally accept well-pled facts as true under Rule 12(b)(6), it need not do so for conclusory allegations, unwarranted or unreasonable inferences, and legal conclusions; nor must the Court strain to find inferences in Plaintiff's favor. *See, e.g., Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 133 (3d Cir. 2006); *Bridges v. Torres*, 809 F.App'x 69, 71 (3d Cir. 2020); *Santiago v. Warminster Township,* 629 F.3d 121, 128 (3d. Cir. 2010); *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997); *Cornell Univ. v. Illumina, Inc*., 2012 WL 1885129, at *5 (D. Del. May 23, 2012), *report and rec. adopted,* 2012 WL 2564888 (June 29, 2012) (citing *Redden v. Smith & Nephew, Inc*., 2010 WL 2944598, at *3 (N.D. Tex. July 26, 2010)).

## ARGUMENT

As the FCC has commented, the TCPA unwittingly spawned a cottage industry of class action litigation, "has strayed far from its original [intended] purpose" as a remedial statute, and has "become the poster child for lawsuit abuse" in this country since its enactment in 1991. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015).[3] It is against this backdrop that federal courts nationwide have realized that, at the pleadings stage in TCPA cases and especially in putative class actions like this one, they must balance the important goal of

[3] Given the favorable relief it affords, this is unsurprising: up to $500 in statutory damages per call, which can be trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(c)(5).

protecting consumers from unwanted calls against the competing but equally important goal of protecting defendants from abusive and costly litigation. As such, TCPA complaints lacking requisite factual support are often dismissed by federal courts under Rule 12(b)(6) for failure to state a claim. Plaintiff's defective FAC should suffer the same fate for at least the reasons below.

**I. <u>All of Plaintiff's Claims Fail as a Matter of Law, and Thus His Entire FAC Should Be Dismissed With Prejudice Under Rule 12(b)(6), Because The Plain and Unambiguous Language of Section 227(c) of the TCPA Does Not Apply to Text Messages.</u>**

As an initial matter, Plaintiff's entire FAC fails as a matter of law because the sole legal basis for both of his TCPA claims does not apply to text messages. And since no amount of factual amendment can cure this legal defect, a complete dismissal with prejudice on this basis is warranted.

As noted above, on its face, Section 227(c) of the TCPA creates a private right of action ***only*** for a person who has "received more than one ***telephone call*** within any 12-month period" in violation of the DNC regulations. 47 U.S.C. § 227(c)(5) (emphasis added). As many courts (including the Seventh Circuit Court of Appeals, which recently became the first appellate court to rule on this issue) have correctly recognized when dismissing text-based claims, Section 227(c) "doesn't mention telephone messages, nor does it use the more encompassing term, telephone solicitation." *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 536-539 (7th Cir. 2026) (applying statutory construction principles and holding Section 227(c)(5) does not provide a private right of action for unwanted texts because the statute is limited to "telephone calls," and that text messages are not telephone calls within the meaning of that provision); *see also Davis v. CVS Pharm., Inc.*, 797 F. Supp. 3d 1270, 1272-1273 (N.D. Fla. 2025) (dismissing with prejudice under Rule 12(b)(6)); *Conrad v. Hart Consumer Products*, 2026 WL 2741623, at *6-13 (N.D. Ala. Sept. 16, 2026) (same).

Accordingly, these courts, and many others, have correctly concluded that "[t]he statutory text … is clear that only telephone calls are actionable under § 227(c)(5), not text messages." *Radvansky v. 1-800-FLOWERS.COM, Inc.,* 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026)

(dismissing on this basis).[4] And again, *Steidinger* is the only appellate-level decision to directly rule on this issue to date. Thus, in the absence of contrary binding Third Circuit authority, this Court should adopt its sound reasoning here, as its sister courts have done in similar cases. *See, e.g., Rush v. Selectquote Ins. Serv., Inc.*, 2026 WL 2495598, at *1-4 (W.D. Mo. July 30, 2026) and *Card v. R.J. Reynolds Tobacco Holdings, Inc.*, 2026 WL 2673068, at *1-3 (M.D.N.C. Sept. 3, 2026) (each finding *Steidinger* persuasive, applying it in the absence of binding authority, and dismissing DNC claims brought by some of the same counsel representing Plaintiff in this case on this basis).

Moreover, as the U.S. Supreme Court recently reiterated, "[e]very statute's meaning is ***fixed at the time of enactment***." *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 400 (2024) (emphasis added). Thus, federal courts "must interpret what Congress wrote" when Section 227(c) was enacted in 1991, and they cannot rewrite it to update it for modern technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405, 409 (2021). Further, it is axiomatic that if a statute's language is plain and unambiguous—like the TCPA's language certainly is—federal courts need not analyze the statute at issue any further when performing a construction analysis and instead "must enforce it according to its terms." *King v. Burwell,* 135 S.Ct. 2480, 2489 (2015). *See also Kirtz v. Trans Union LLC,* 46 F.4th 159, 162 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42 (2024) ("[W]here Congress has clearly expressed its intent, we may neither second-guess its choices nor decline to apply the law as written."); *Stockdale*, 2026 WL 591842, at *4.

Courts applying these core principles have therefore looked to the plain meaning of the term "telephone call" as of the date of enactment (*i.e.*, 1991) and concluded that texts are not covered by

---

[4] *See also Stockdale v. Skymount Prop. Grp., LLC*, 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026); *El-Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *James v. Smarter Contact, Inc.,* 2026 WL 879244, at *3-5 (M.D. Fla. Mar. 31, 2026); *Irvin v. Sonic Indust. Serv., LLC*, 2026 WL 1098403, at *2–5 (N.D. Ga. Apr. 20, 2026); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2-4 (S.D. Ind. Mar. 26, 2026); *Richards v. Shein Distrib. Corp.*, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026) (each ruling similarly and dismissing for same reason).

Section 227(c) because texts did not even exist yet. *See Steidinger*, 182 F.4th at 535 (citing *Blow v. Bijora, Inc.*, 191 F. Supp. 3d 780, 786 n.3 (N.D. Ill. 2016) (noting the first text message was sent in December 1992)); *see also Davis*, 797 F. Supp. 3d at 1273 (ruling similarly); *Stockdale*, 2026 WL 591842, at *3 (same). In other words, the "ordinary public meaning of telephone call at the time of the TCPA's enactment, as well as the context provided by surrounding provisions of § 227," make clear that text messages are <u>not</u> calls under Section 227(c) of the TCPA. *Steidinger*, 182 F.4th at 535. This legal defect alone dooms Plaintiff's entire FAC, as his claims are based only on texts.

AdaptHealth anticipates that Plaintiff may make various counterarguments in response to this Motion on this point, none of which have any merit. For example, Plaintiff may refer to other regulations implemented by the FCC ***over a decade after*** Section 227(c) was enacted that mention text messages. That is a non-starter. On the one hand, the FCC's authority to implement regulations under Section 227(c) was expressly limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and ***in the 9 months*** after December 20, 1991. 47 U.S.C. §§ 227(c)(1) and (2). Those regulations were implemented in 1992, as authorized, and also do not refer to text messages. *See generally* 47 C.F.R. § 64.1200(c). Therefore, any DNC regulations enacted by the FCC thereafter exceeded the FCC's limited rule making authority and are of no moment here.

On the other hand, while the FCC previously stated in 2003 that "calls" do include "text messages" in some circumstances, that only addressed texts in the context of the TCPA's automated calling restrictions, which falls under a different statutory provision, *i.e.*, Section 227<u>(b).</u> *See In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115–16 at ¶ 165, n.603–05 (2003); *see also Jones*, 792 F.Supp.3d at 900 ("[O]n its face…, the 2003 Order explicitly references only Section 227(b)"). Regardless, any of the FCC's prior interpretations are not entitled to deference

today, under binding Supreme Court precedent. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025) (holding that "the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct"); *Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play"). This is true even though Section 227(c) affords some limited rulemaking authority to the FCC. *See Radvansky*, 2026 WL 456919 at *4.

Rather, *McLauglin* merely "calls for 'appropriate respect,' [to prior federal agency decisions] not 'appropriate deference.' [] And the concepts are different. One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming [*arguendo*] the FCC['s] [2003] Order clearly defined 'telephone calls' as that term is used in § 227(c)(5)"—and it does not—"'appropriate respect' for that conclusion would not require a different outcome here." *Davis*, 797 F.Supp.3d at 1275 (quoting *McLaughlin*, 606 U.S. at 168) (internal citations omitted). *See also Steidinger*, 182 F.4th at 538 (applying *McLauglin* and holding: "That the FCC may have a different interpretation of call as that word appears elsewhere in the statute or in other contexts isn't sufficient to override our conclusion about the meaning of § 227(c)(5)" and if it covers texts). In any event, the fact remains that "the FCC 'has not engaged in rulemaking to define the term [telephone call] for the purpose of § 227(c)(5)'" to date, which means that "no FCC rule or regulation says that a private citizen can sue the sender of unwanted … text messages" under that statutory provision. *Conrad*, 2026 WL 2741623, at *12, n.3 (quoting *Steidinger*, 182 F.4th at 538).

Plaintiff may also invite this Court to expand the language of Section 227(c) to cover <u>all</u> communications to or from any telephone—which would also include faxes and emails on

smartphones, which are covered under different provisions or not at all—as other courts have erroneously done. The Court should decline this invitation, as doing so would violate the well-settled statutory construction principles discussed above and stretch the plain and unambiguous language of the relevant statutory provision (which is dispositive) far beyond Congress' express limits to its breaking point. *See also Radvansky,* 2026 WL 456919 at *4 (rejecting similar invitation); *Card*, 2026 WL 2673068, at *2 (same, noting that "if it had been the intent to include all types of communications, Congress more simply could have used the broader term 'call' as it did in § 227(b), rather than 'telephone call' as it did in § 227(c)(5).") (citing *Steidinger*, 182 F.4th at 539).

Indeed, a comprehensive review of the statute's history, plain and unambiguous language, and overall structure confirms that Congress did not employ language suggesting the term "telephone call" used in Section 227(c) would serve as a catchall for all present or future phone technology.

*First*, Congress has amended the TCPA multiple times since 1991 but has never amended Section 227(c) to include texts. In 2018, for example, Congress amended the statute to address text messages in connection with Caller ID requirements, which fall under a different provision of the statute. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47 U.S.C. § 227(e)). In doing so, Congress distinguished between "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A), (B).

These amendments and others (and that Section 227(c) was not also similarly amended) demonstrate three critical points: (1) Congress knows how to differentiate between technologies; (2) it did not just assume texts were already covered by the TCPA's reference to "telephone calls" (or else there would have been no need to amend Section 227(e) to include them); and (3) it did not intend every provision of the TCPA (which function independently from each other[5]) to sweep in

[5] In fact, the TCPA was designed to regulate several independent types of potential telemarketing concerns, including live voice solicitations (*see* 47 U.S.C. § 227(c)); artificial or pre-recorded

texts. *See Radvansky*, 2026 WL 456919, at *4; *see also El-Sayed,* 2025 WL 2997759, at *2 (noting that the term "'text message' appears elsewhere in the TCPA and related amendments…confirms Congress understood the pertinent distinction and legislated mindful of the distinction."); *Steidinger*, 182 F.4th at 538-9 (discussing the 2018 amendments to § 227(e) and rejecting the "plaintiffs' invitation to attribute persuasive significance to Congress's inaction regarding § 227(c)").

That Section 227(c) has not been amended to include texts to date is because Congress may have reasonably concluded "text messages do not present the same type of nuisance that [voice] calls do" and thus has intentionally excluded texts from Section 227(c). *Fashion Nova*, 2026 WL 847568, at *3. But its reasoning does not change the result this Court should reach. Where Congress has drawn such clear statutory lines—however imperfect they may seem in hindsight—courts are not free to redraw them. In the end, "the fact remains that Section 227(c)(5) of the TCPA [only] includes 'telephone call' and does not mention text messages or SMS messages." *Davis,* 792 F. Supp. 3d at 901. Statutory construction principles mandate that this plain language be applied here as written.

*Second*, Congress defined "telephone solicitation" in 47 U.S.C. § 227(a)(4) to include "the initiation of a telephone call or message." Though this separate section refers to artificial or prerecorded ***voice*** messages, it does <u>not</u> refer to "text messages"; and Congress' deliberate use of "telephone call or message" in a "neighboring provision" merely highlights that the term "telephone call" as used in Section 227(c) does <u>not</u> encompass all forms of "messages." *Davis*, 797 F. Supp. 3d at 1274. *See also Radvansky*, 2026 WL 456919, at *4 ("construing these distinct phrases [in

---

voice messages (*see* § 227(b)(1)(B)); auto-dialing to telephones (e.g., cell phones) where the subscriber is charged for the call (*see* § 227(b)(1)(A)(iii)); automated telemarketing to medical or emergency facilities (*see* § 227(b)(1)(A)(i)); unsolicited faxes (*see* § 227(b)(1)(C)); and caller ID requirements (*see* § 227(e)). To read "telephone call" in Section 227(c) to cover any form of communication to and from a phone would sweep in faxes from Section 227(b) and other types of phone-based communications which Congress did not intend to be covered by Section 227(c)—such as emails, which are sent by modern smart phones and not regulated by the TCPA at all.

subsections (a) and (c)] identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage"); *Irvin*, 2026 WL 1098403, at *4 (ruling similarly and declining to apply Section 227(a)(4) to 227(c)); *Steidinger*, 182 F.4th at 536 (same, holding "we presume that because Congress used a different term in these two subsections of § 227, it intended a different meaning") (citing *Sw. Airlines Co. v. Saxon,* 596 U.S. 450, 457–58, (2022)); *Card*, 2026 WL 2673068, at *2 ("The context of this provision also supports limiting its reach to telephone calls. Congress used broader language explicitly encompassing text messages in other subsections of the TCPA. [] This demonstrates that Congress intended 'telephone call' in § 227(c)(5) to have a narrower scope" than other TCPA provisions.) (comparing and citing 47 U.S.C. § 227(a)(4), § 227(c)(1) & (3), and § 227(e)(8)(B)) (internal citations omitted).

In short, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 558 U.S. 233, 249 (2010) (quoting *Nken v. Holder,* 556 U.S. 418, 430 (2009)). This belies any argument texts are "telephone calls" under the plain language of Section 227(c). Rather, Congress' omission of texts from the scope of § 227(c) is, and remains, intentional and deliberate. The law mandates that this Court honor that deliberate choice. To rule otherwise here and expand "telephone call" in Section 227(c) to encompass every form of communication to and from a phone would not only depart from the statute's plain and unambiguous text (which is dispositive on this issue) but it also "would likely more than double the number of private causes of action authorized" by Congress under the TCPA. *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026). That would be improper.

*Third*, Congress has consistently drawn technology-specific distinctions within the TCPA. For example, although a fax transmission could be described colloquially as a "call" to the extent it

is a communication transmitted using a telephone or over a telephone line, Congress subjected fax advertisements to a separate regulatory scheme under Section 227(b), not Section 227(c), because faxes raise distinct concerns (*e.g.*, the consumption of paper/toner). *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 743 (6th Cir. 2013) (citing S. Rep. No. 102-178, at 4–5 (1991)). As noted above (*see* fn. 5, *supra*), the same pattern appears throughout the TCPA, which differentiates among autodialed calls, prerecorded voice messages, live calls, and faxes, etc., each of which is assigned different statutory treatment. *See also El-Sayed*, 2025 WL 2997759, at *2; *Conrad*, 2026 WL 2741623, at *10 (both discussing the TCPA's different treatment of phone technologies).[6] The same logic applies to text messages: different communication technologies raise different concerns and thus necessitate different statutory rules. *See also Steidinger*, 182 F.4th at 536, 539 (holding that (i) in performing a statutory construction analysis courts must "read the words of a statute in their context, which includes the overall statutory scheme" and (ii) "both the overall statutory scheme and the ordinary public meaning of telephone call indicate that § 227(c)(5)'s private right of action does not extend to unwanted text messages") (citing, *inter alia*, *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000)).

Plaintiff may also cite to other decisions in response to this Motion interpreting whether a text is a "call" under Section 227(b) (which, again, is a different provision covering different technologies) to suggest that texts also qualify as a "telephone call" under Section 227(c). That too would be unavailing. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Roberts*

[6] In fact, numerous courts examining this issue have correctly found that voice calls and text messages differ "in several important ways" including that texts, unlike telephone calls, "do[] not require that a person pick up a call, listen to a voice, or tie up their phone's line." *Fashion Nova*, 2026 WL 847568, at *3. *See also Stockdale,* 2026 WL 591842, at *4 (ruling similarly); *James*, 2026 WL 879244, at *3–5 (same); *Steidinger*, 182 F.4th at 536 (same). So should this Court.

*v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (quoting *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)). Here, Sections 227(b) and (c) use the word "call" in different contexts and they "contain different language." *Steidinger*, 182 F.4th at 539. Indeed, "Section 227(b)(1)(A) [of the TCPA] deals with 'a broader prohibition on 'any call'" and not "the statutory term 'telephone call' at issue here" with respect to DNC claims under Section 227(c). *James,* 2026 WL 879244, at *3-5 (noting that courts relying on prior interpretations of Section 227(b) improperly focus on the verb "call" used in Section 227(b) and did not consider the definition or modifying effect of the term "telephone" in 227(c) whereas "[i]n Section 227(c)(5), 'call' is used as a noun") (quoting *Davis*, 797 F. Supp. 3d at 1273); *see also Steidinger*, 182 F.4th at 536 & 538 (recognizing that cases interpreting Section 227(b) are inapplicable to this issue and concluding that, "in 1991, a 'telephone call' [used in Section 227(c)] referred to communication via sound" and "[t]ext messages do not reproduce sounds"); *Rush*, 2026 WL 2495598, at *4 (noting "§ 227(b) and § 227(c)(5) contain different language" and concluding "[s]ubsection (b) prohibits a wide[r] range of conduct" than subsection (c)) (quoting *Steidinger*, 182 F.4th at 539); *Card*, 2026 WL 2673068, at *2 (ruling similarly). At bottom, this context matters and must not be ignored; and relying on any authorities interpreting "call" under § 227(b) to determine the meaning of "telephone call" in § 227(c) is comparing apples to oranges. *See also FCC v. AT&T Inc.,* 562 U.S. 397, 402-403 (2011) (noting different parts of speech sharing a root word "may have meanings as disparate as any two unrelated words").

Lastly, in response to this Motion, Plaintiff may cite contrary decisions from other courts on this issue (including from other district courts in this Circuit or this District), in which those courts declined to interpret "telephone call" to include only voice communications and/or seemingly expanded the narrower language in Section 227(c) to cover all communications to and

from a telephone (which again would improperly sweep in faxes or emails).[7] However, AdaptHealth respectfully submits that such decisions were wrongly decided—primarily as they are largely based on flawed decisions interpreting the broader language of "call" in Section 227(b), among other reasons—and, most notably, they were all issued prior to the Seventh Circuit's recent well-reasoned decision in *Steidinger*. Simply put, as the *Radvansky* court noted, "the reasoning underlying these contrary decisions is inherently flawed" for multiple reasons discussed above, and for many others, and therefore they should not be followed in the present case. 2026 WL 456919 at *4 (criticizing various cases on this issue). *See also Stockdale*, 2026 WL 591842, at *3 (same).

All told, while Plaintiff may believe that there are compelling reasons for the Court to expand Section 227(c) of the TCPA to reach the realities of today's communication technologies, only ***Congress*** can do so. Because text messages alone cannot support any Section 227(c) claim, Plaintiff's entire FAC fails as a matter of law. And as this is an incurable defect, the FAC should thus be dismissed with prejudice under Rule 12(b)(6) on this basis. *See, e.g., Davis and Conrad*, *supra*.

## II. The Entire FAC Should Also Be Dismissed Because Plaintiff Fails to Allege Sufficient Facts Supporting Other Essential Elements of His Two Asserted TCPA Claims.

Aside from its fatal legal defect, Plaintiff's FAC also lacks sufficient factual support. In Count I, Plaintiff invokes the TCPA's National DNC Registry rules, which prohibit "initiat[ing]" more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). In Count II, Plaintiff invokes the "internal" DNC rules, which govern (for example) what to do when a person who originally provided consent later revokes it and asks to be placed on the caller's DNC list. Those provisions,

[7] *See, e.g., Pero v. Brown-Daub,* 2026 WL 1747214, at *4-5 (E.D. Pa. June 17, 2026); *Newell v. Children's Dental Health Assocs., LLC*, 2026 WL 927378, at *1, *9 (E.D. Pa. Apr. 6, 2026); *Cole v. C/T Install America, LLC*, 2026 WL 916582, at *1 n.1 (E.D. Pa. March 23, 2026).

*inter alia,* require that any "person or entity" making a "call for telemarketing purposes" to "honor a residential subscriber's [internal DNC] request" made to them within a "reasonable time" and have policies and procedures in place meeting certain minimum standards. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d). As demonstrated below, Plaintiff did not adequately plead such claims.

### A. Counts I and II Should Be Dismissed Because Plaintiff Fails to Plausibly Allege Receipt of an Actionable "Telephone Solicitation" or "Telemarketing" Call.

Section 227(c) of the TCPA, on its face, applies only "to telemarketing and solicitation calls," as opposed to all supposedly "unwanted" phone communications, like informational calls. *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). As such, for Count I of the FAC here, Plaintiff must also plead facts suggesting his receipt of a "telephone solicitation," which is defined in the TCPA's related implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15). For Count II, Plaintiff must likewise plausibly allege receipt of a "telemarketing" call, which has a substantially similar definition. *See* 47 C.F.R. § 64.1200(f)(13). To meet federal pleading standards in this regard, however, alleged "[c]all recipients must do more than" baldly conclude that "the calls in question were telephone solicitations" or "telemarketing" calls to plead this essential element of a Section 227(c) claim. *Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024).

In other words, "[w]hile Plaintiff is not required to provide a line-by-line transcript of the telephone calls in question, he is still required to provide more than a conclusory statement that Defendant attempted to solicit" him to make a purchase of its products, to avoid a dismissal on this basis. *Bell v. Hawx Servs., LLC*, 2025 WL 2533371, at *4 (E.D. Cal. Sept. 3, 2025). Instead, "'further factual enhancement'" is needed to plead this essential element. *Gulden v. Consol. World Travel Inc.,* 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (quoting *Twombly*, 550 U.S. at 557).

Federal district courts across the country have, therefore, consistently dismissed TCPA DNC claims under Rule 12(b)(6) where the plaintiff merely relies on conclusory labels like "advertisement" or "solicitation" but omits additional facts meeting the *Iqbal*/*Twombly* standard. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell*, 2025 WL 2533371, at *3–4 (citing *Gulden*, 2017 WL 3841491, at *3, *Andersen v. Nexa Mortg., LLC,* 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024), and *Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021)); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023); *Weingrad*, 2024 WL 4228149, at *4. Such is true here.

As applied in this case, Plaintiff does not come close to meeting the settled standards above, even after amending. Instead, Plaintiff ignores or tries to spin the content of the subject texts—none of which offered to sell him any goods or services on their face—and mostly just offers conclusory labels as to the supposed "purpose" of the subject communications and other legal buzzwords like "solicitation" or "telemarketing" or the like, not actual facts. *See, e.g.,* Dkt. 8, ¶¶ 17, 30, 31, 32, 48, 52, 53, 56. Myriad courts have found such naked allegations insufficient for any DNC claim to survive dismissal at the pleading stage on this basis, without additional factual enhancement. *See, e.g., Eggleston*, 2022 WL 886094, at *7 ("Plaintiff simply relies on conclusory labels such as 'advertisement' and 'promotion' without any supporting factual detail. This falls short of Plaintiff's burden to plead sufficient factual matter to state a plausible claim" under Section 227(c).); *Smith v. Getmehealthcare, LLC*, 2025 WL 3771271, at *2 (M.D. Fla. Dec. 31, 2025) (dismissing DNC claim on this basis where the complaint failed "to allege facts regarding the caller(s)' identities, the content of the calls, offers presented, or any other facts beyond speculation"); *Weingrad,* 2024 WL 4228149, at *3–4 (dismissing DNC claim where plaintiff "only plead[ed] [that] 'the purpose of the [subject]

call was to sell the Plaintiff health insurance" and thus did "not plead a statutory violation without 'further factual enhancement'" as required by federal pleading standards). This Court should too.

The actual pled content of the texts tells a much different story. Again, ***none*** of the subject communications, on their face, encouraged Plaintiff to purchase, rent, or invest in anything; instead, they appear to relate to a ***purchase that already happened***—*i.e.,* they invited the recipient to review an "invoice" or referred to an "order" that already occurred. *See* Dkt. 8, ¶¶ 32, 48. Therefore, Plaintiff has not alleged he received an actionable "telephone solicitation" or "telemarketing" call as defined by the TCPA's governing regulations above, which further warrants a complete dismissal of the FAC. *See, e.g., Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *9 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026) (dismissing on this basis because "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all"); *Murphy v. DCI Biologicals Orlando, LLC,* 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) ("Because neither of the [subject communications] encouraged [the named plaintiff] to purchase, rent, or invest in anything, they do not constitute 'telephone solicitations' under the TCPA."); *Norman v. Northern Ill. Gas Co. Inc*., 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing on this basis where plaintiff failed to allege the defendant "encouraged the purchase or rental or investment in any goods or services" despite multiple calls from the defendant with knowledge plaintiff was not the correct party).

That Plaintiff's FAC now alleges that he did not place the order or make the purchase mentioned in the subject texts (*see* Dkt. 8, ¶¶ 23-29) does not move the needle on his DNC claims from merely conceivable to plausible. A communication responding to a prior inquiry or relating to a purchase made by someone else, for example, is not magically transformed into an unlawful "telephone solicitation" or "telemarketing" call fitting the statutory definitions above merely because

it possibly reached the wrong person. *See e.g., Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016) (finding that calls made in response to an inquiry "[we]re not unsolicited telemarketing calls 'initiated' for the purpose of marketing a good or service."); *Dukes v. DirecTV LLC,* 2016 WL 11956532, at *2 (N.D. Tex. Nov. 7, 2016) (dismissing internal DNC claim on this basis where the plaintiff was not solicited on the subject call, which was made to a wrong number) (collecting cases); *Less v. Quest Diagnostics Inc.,* 2021 WL 266548, at *1–2 (N.D. Ohio Jan. 26, 2021) ("[M]erely providing information about an available service are not implicated by the [TCPA]."); *Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025) (holding that, while the communications at issue encouraged the plaintiff to utilize the defendant's free services, they were not "telephone solicitations" and thus were not a violation because the plaintiff was not "encouraged" to ***pay*** for the services); *see also Guglielmo v. CVS Pharmacy,* 2021 WL 3291532, at *1-2 (D. Conn. Aug. 2, 2021) (granting summary judgment for defendant and ruling that "simply because a communication ultimately results in a sale of goods does not always make it an advertisement" under the TCPA, where the plaintiff allegedly received communications intended for his father). At the end of the day, ***Plaintiff*** was not being solicited to purchase or rent anything, per the face of the subject texts, even if he received communications about someone else's order for which his number was provided as alleged. Plaintiff labeling them as solicitations or telemarketing does not make it so.[8]

In sum, the TCPA indisputably "is aimed [only] at calls that ***directly*** advertise [or, in the context of a DNC claim, directly solicit a purchase] and ***not*** [at] 'calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future'"—let alone

[8] Logic and common sense support this conclusion. Plaintiff alleges that AdaptHealth "is a national home medical equipment company that distributes home medical equipment, medical supplies, and related services throughout the United States" including "medical devices for sleep apnea and diabetes management." Dkt. 8, ¶¶ 20, 21. It begs credulity to think—and it is certainly implausible for Plaintiff to allege and would be unreasonable for this Court to infer—that AdaptHealth would indiscriminately send out "cold" solicitations to individuals to buy such specific medical supplies.

calls about business that the caller already conducted with another individual. *Jance v. Homerun Offer LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) (quoting *Knutson v. Blue Light Sec., Inc.*, 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)) (emphasis added). As Plaintiff does not allege receipt of a "telephone solicitation" or "telemarketing" call fitting the statutory definitions above and was not solicited to buy anything, his entire FAC should also be dismissed on this basis.

### B. Count II of the FAC Should Also Be Dismissed Because Plaintiff Failed to Plausibly Allege a Violation of the TCPA's "Internal" DNC Regulations.

Plaintiff's claim in Count II fails for an additional reason. Courts have widely recognized that "[t]he 'violation of the [internal DNC] regulations' is the initiation of the phone call without having implemented the minimum procedures[.]" *Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009). In other words, the TCPA's internal DNC rules do <u>not</u> prohibit "actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list." *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) (citing *GVN Michigan*, 561 F.3d at 632). Instead, the operative question (and only basis for a violation) is whether the caller ***implemented and maintained*** such procedures in the first instance prior to making the alleged calls (or here texts), and not merely whether calls or texts were received after a "stop" request, or for any other reason proscribed by the regulations. *See GVN*, 561 F.3d at 632. *See also Barr v. Macy's.com, LLC*, 2023 WL 6393480, at *4–6 (S.D.N.Y. Sept. 29, 2023) (dismissing and holding the "mere fact" a plaintiff receives a call after an internal DNC request is not a violation) (citing *Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017)).

Failure to adequately allege this warrants dismissal under Rule 12(b)(6). *See, e.g., Hulett v. EYEBUYBIRECT,* 2025 WL 1677071, at *5-7 (N.D.N.Y. June 13, 2025); *Laccinole v. Rocket Mortg., LLC*, 609 F. Supp. 3d 68, 73 (D.R.I. 2022). And it is not enough for Plaintiff to "simply recite[] the

requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" to avoid dismissal on this basis. *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012).

This accepted analytical approach to evaluating the facial sufficiency of internal DNC claims, with the focus properly being on the implementation and maintenance of the procedures themselves rather than on the alleged communications, is in accord with the plain language of the TCPA's internal DNC regulations as well as with how those regulations work in practice. That is because, *inter alia*, (i) the internal DNC regulations do <u>not</u> require perfect internal practices and procedures, but rather only require implementing "reasonable" ones (meaning that unintentional errors or technical glitches are not a violation); (ii) the regulations simply require businesses to "honor a residential subscriber's [internal DNC] request" within a "reasonable time" from the date of the request, not to exceed 10 business days; and (iii) internal DNC requests need only be honored "within a few days or weeks" and not immediately. *See* 47 U.S.C. § 227(c)(5)(C); 47 C.F.R. § 64.1200(d)(3); *In re Rules & Regs. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶ 94 (2003).

As applied in this case, Plaintiff still largely regurgitates the statutory text about AdaptHealth's purported lack of procedures for Count II without any additional factual enhancement, even after amending. Thus, he still rests his claim squarely on his conclusory allegations that he allegedly received one text after making a "stop" request, which again is not a violation of the internal DNC regulations by itself as many courts have held. *See, e.g.,* Dkt. 8, ¶¶ 38-44. Yet, Plaintiff still does not allege, for example, that he requested a copy of AdaptHealth's internal DNC policy—which he could have done, per the applicable regulations. *See* 47 C.F.R. § 64.1200(d)(1). This might have given Plaintiff a minimal factual basis to allege whether the texter had internal procedures in place before he was texted. *See Barr,* 2023 WL 6393480, at *5. That Plaintiff did not allege this fact (or others) after amending his original complaint to address this

defect in response to AdaptHealth's initial motion to dismiss on this point is telling. *See* Dkt. 6-1 at 19. Regardless, Plaintiff must do more than "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" as he did to avoid dismissal on this basis. *Bailey*, 867 F. Supp. 2d at 842. This failing further supports dismissal of Count II.

Even if *arguendo* receiving an additional communication was a violation of the internal DNC regulations (and it is not), in order to have a private right of action for violations of those rules in the first instance, plaintiffs must plausibly allege receipt of "***more than one*** telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5) (emphasis added). Here, Plaintiff alleges receipt of ***only one*** additional text (the content of which does not fit the statutory definition of "telemarketing" in any event) after his purported opt-out request. *See* Dkt. 8, ¶¶ 48, 55. Therefore, Count II should be dismissed for this additional reason.

## III. The Entire FAC Should Also Be Dismissed Because Plaintiff Fails to Plausibly Allege a Theory of Liability Under the TCPA (*i.e.*, Direct or Vicarious Liability).

Plaintiff also does not sufficiently plead a theory of liability under the TCPA despite having amended. This failure is also fatal to his entire FAC under the weight of applicable federal authority.

Plausible allegations as to a caller's "identity is a ***necessary*** element of ***all***" TCPA claims. *Gulden*, 2017 WL 3841491, at *3 (emphasis added). Along these lines, as noted above, to properly identify the caller at the pleadings stage, one of two theories of liability must be adequately pled in accordance with federal pleading standards in every TCPA case to avoid dismissal under Rule 12(b)(6)—*i.e.*, direct liability or vicarious liability. *See, e.g., Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Smith v. Vision Solar LLC*, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (citing *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Landy v. Nat. Power*

*Sources, LLC,* 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (each dismissing on one or both of these bases). This established rule means that, "for a person to 'make' [or 'initiate'] a call under the TCPA," the defendant "must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call"—and to meet federal pleading requirements in this regard of course, there must be actual ***facts*** supporting such allegations, not mere conclusions or speculation. *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019).

Further, failure to plead facts supporting these theories warrants dismissal of any TCPA claim in its entirety at the pleadings stage, regardless of whether the plaintiff pled facts supporting other essential elements of the claim(s) asserted. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the [subject communications]—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the claims.). Such is true in this case.

Firstly, federal law is clear that direct TCPA liability applies ***only*** to persons or entities that "initiate" or "make" telemarketing calls, which means to actually "***physically place***" the calls at issue directly to the plaintiff. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added).[9] *Accord Direct Building Supplies*, 2021 WL 4623275, at *3 (dismissing on this basis where, as here, the plaintiff "provide[d] no details specifying how [plaintiff] knew that [the defendant] in fact [physically] placed these calls" and citing, *inter alia*, *Aaronson,* 2019 WL 8953349, at *2-3 (holding that, "at the pleadings stage, [a] plaintiff must allege facts to support his

[9] Though the terms are used somewhat interchangeably in the statute and in case law, federal courts evaluating and dismissing conclusory direct TCPA liability claims have uniformly held that the terms "make" or "initiate" in this context mean to "physically" place a phone call or send a text directly.

[or her] conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that [the defendant] actually, physically initiated the telephone calls at issue" there)); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (dismissing, holding TCPA plaintiffs must allege facts to "allow the Court to reasonably infer that defendant is [directly] liable for each call" or text message at issue).

In other words, for direct TCPA liability purposes, the defendant <u>itself</u> must literally pick up the phone and physically call or text the plaintiff directly. *See, e.g., Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing TCPA claim brought by some of the same counsel representing Plaintiff on this basis where, as here, the plaintiffs did not plausibly allege facts supporting an inference that the "[d]efendant itself" physically made the calls at issue).

Conversely, direct TCPA liability "generally does not include persons or entities … that might merely have some [indirect] role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583; *see also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing on this basis, holding TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal). Similarly, "[m]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability purposes. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (calls "on behalf" of defendant do not support direct TCPA liability). Rather, logically and legally, there must be a "direct connection between a person or entity and the making of a call" for <u>direct</u> TCPA liability to attach. 30 FCC Rcd. at 7980.

Furthermore, to meet federal pleading requirements in a TCPA case, "[m]erely alleging that [a defendant] 'made' or 'initiated' [a] call" without any additional factual enhancement—as Plaintiff did—"is ***not*** sufficient to allege a [direct] TCPA [liability] claim" and avoid a dismissal on this basis. *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (emphasis added). Consequently, district courts throughout this Circuit and nationally have routinely dismissed such ill-pled TCPA claims, like Plaintiff's here, on direct liability grounds. *See, e.g., Direct Building Supplies,* 2021 WL 4623275, at *3 (dismissing where plaintiff failed to plead sufficient supporting facts, citing *inter alia Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)); *Doyle*, 2023 WL 3984951, at *4–6 (allegations calls were "from Defendant, its employees and/or agents" deemed insufficient); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing DNC claim against one defendant on this basis where the "[p]laintiffs ha[d] not pleaded any ***facts*** supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Belleville v. Florida Insur. Services, Inc*., 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part*, 2024 WL 2794108 (May 31, 2024) (ruling similarly); *Cosenza v. Nice North America, LLC*, 2026 WL 2248829, at *5 (C.D. Ill. Aug. 4, 2026) (dismissing similar complaint brought by some of the same counsel representing Plaintiff on this basis, where "[t]he only allegation suggesting direct liability [pled in the complaint was] 'Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff'" and rejecting plaintiff's argument that "the fact that the representative provided him the Defendant's website and the prerecorded message promoted products associated with Defendant renders direct liability plausible" without more facts). Plaintiff's FAC has the same defect.

In short, "simply asserting a purported fact" as to the caller's identity, as Plaintiff has repeatedly attempted here, "does not make it one, where there are no factual allegations to support

the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA claim on this basis). Rather, "[a]s a party to these calls, Plaintiff 'should be able [and indeed is legally required] to provide greater detail'" to plausibly allege a direct TCPA liability theory under the *Iqbal*/*Twombly* standard. *Matthews v. Senior Life Ins. Co.*, 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs*, 2020 WL 9348208, at *6). He did not.

In this case, it is apparent that Plaintiff has merely carried over and repackaged the same flawed "either/or" allegations from his original complaint to this FAC that myriad federal courts across the country have firmly rejected as insufficient to plausibly allege any TCPA liability theory under *Iqbal*/*Twombly*. In fact, as the Court may recall, Plaintiff merely alleged (or, rather, baldly concluded) in his original complaint that "***Defendant and/or any of their affiliates, agents, and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf***" sent the subject text messages to his cell phone. Dkt. 1, ¶¶ 72, 74; *see also id*. ¶ 55 (seeking to represent two putative classes of persons who received unlawful communications "***from or on behalf of*** Defendant"); ¶ 68 (alleging the identification of class members was "ascertainable from records maintained by ***Defendant and/or any of their agents or vendors***") (all emphases added).

While Plaintiff removed from some of the conclusory references to third party "agents" or "affiliates" when preparing his FAC, seemingly to address the arguments in AdaptHealth's initial motion to dismiss his original complaint on this front (*see* Dkt. 6-1 at 23, 25), he did not remove them all, and in fact added even <u>more</u> such references. Thus, at its core, Plaintiff's FAC still alleges, in a wholly conclusory fashion and without requisite factual support, that the subject text messages were sent <u>either</u> by AdaptHealth itself <u>and/or</u> by countless unidentified third parties acting on its "behalf." *See, e.g.,* Dkt. 8, ¶ 44 (alleging "AdaptHealth failed to implement or maintain reasonable procedures for recording, communicating, applying, and enforcing company-specific do-not-call

requests across the systems, business units, ***affiliated entities, and persons used to communicate with consumers on AdaptHealth's behalf***."); ¶ 46 ("The precise architecture of AdaptHealth's suppression systems, the identity of the persons responsible for maintaining those systems, and the manner in which AdaptHealth distributes suppression information among its business units, ***affiliates, vendors,*** and messaging platforms are matters within Defendant's possession and control and will be established through discovery."); ¶ 75 (still seeking to represent the same two putative classes of persons who received unlawful communications "***from or on behalf of Defendant***"); ¶ 86 (still alleging that the identification of class members is "ascertainable from records maintained by ***Defendant and/or any of their agents or vendors***"); ¶ 95 (seeking "injunctive relief prohibiting ***Defendant and/or other persons or entities which discovery may reveal may have been acting on Defendant's behalf*** from making telemarketing calls") (all emphases added).

Yet, courts have found that such conclusory and equivocating allegations are "woefully insufficient to state a claim ***of any sort***" under basic federal pleading standards. *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). Such is particularly true when it comes to properly pleading TCPA liability theories, as the many authorities cited above show. *See, e.g., Cosenza* and *Doyle*, *supra*. *See also Dobronski v. Russo,* 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Melito v. Am. Eagle Outfitters, Inc*., 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing on this basis, finding "Plaintiffs' conclusory assertions [the defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement," and holding that "none of plaintiffs' factual allegations, even if accepted as true, establishe[d]

direct liability on [defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement, of a text message"). This Court should rule similarly.

Moreover, Plaintiff concedes that the third text at issue was not physically sent by AdaptHealth but concludes it was sent by a different corporate entity. *See* Dkt. 8, ¶ 55. That Plaintiff now concludes that two of the three texts at issue "were initiated and sent by AdaptHealth" based solely their content—*i.e.*, that AdaptHealth's name was identified in both and a call back number was provided in one of them (*see* Dkt. 8, ¶ 33)—does not save his FAC from dismissal on this basis either for several reasons. First, these new allegations do not explain away the many contradictory references to third parties pled throughout the FAC. Plainly, Plaintiff is just throwing darts at a dartboard, hoping one hits a viable defendant eventually, and is merely speculating as to who he contends actually physically transmitted these messages rather than pleading actual facts here. In any event, these faulty allegations are not entitled to any presumption of truth. *See Bocker v. Hartzell Engine Techs., LLC,* 2023 WL 415792, at *4 & n.11 (D. Del. Jan. 26, 2023) ("Where a plaintiff's own pleading is internally inconsistent and contradictory, the court is not obligated to reconcile or accept such contradictory allegations" as true under Rule 12(b)(6).) (collecting cases).

Second, Plaintiff does not allege that he called the number back and reached AdaptHealth directly, let alone facts supporting an inference that AdaptHealth itself physically sent that text containing the number or any of the others at issue.[10] Third, again, the content of an alleged communication alone is not dispositive of this issue, as the many authorities above show. And fourth, as many courts have recognized, more factual enhancement is needed to properly allege a direct TCPA liability theory at the pleading stage. *See, e.g., Cosenza*, 2026 WL 2248829, at *5

[10] That he allegedly sent an email to AdaptHealth and AdaptHealth responded (*see* Dkt. 8, ¶ 36) does not support an inference AdaptHealth itself sent any of the subject texts. *See, e.g., Hamilton v. El-Moussa,* 2020 WL 2614625, at *2 (C.D. Cal. Feb. 10, 2020) (follow up email alone insufficient to allege liability). At most, this shows he asked to be added to AdaptHealth's internal DNC list.

(rejecting an argument that "the fact that the representative provided him the Defendant's website and the prerecorded message promoted products associated with Defendant renders direct liability plausible" without more); *Barnes,* 2023 WL 2592371, at *1-3 (dismissing on this basis, even though one plaintiff spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant); *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller said they were calling "from" the defendant and provided the defendant's website, where the plaintiff alleged "in conclusory fashion that Defendant was directly involved in making" the subject calls, without more).[11] As Plaintiff offers no such factual enhancement in this case, his FAC fails and should be dismissed on direct liability grounds.

To the extent Plaintiff is still attempting to plead a vicarious TCPA liability theory, he also failed. Other than still using legal buzzwords (e.g., "agents") which are not entitled to a presumption of truth under *Iqbal*/*Twombly*, his FAC contains zero factual allegations supporting any inference that AdaptHealth was in a common law agency relationship with any third party that texted him, as is required to plead vicarious TCPA liability, after amending. Therefore, his FAC should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc.,* 80 F. Supp. 3d 610, 619 (E.D. Pa. 2015) (dismissing where plaintiff did not plead allegations supporting his vicarious TCPA liability theories).

[11] *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *1–5 (N.D. Cal. Mar. 28, 2018) (dismissing on this basis, even though at-issue text identified the defendant by name and had a link to its website); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing on this basis where the plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"); *Scruggs*, 2020 WL 9348208, at *6-10 (dismissing on this basis; calls from someone who stated they were "associated with" defendant were deemed insufficient without more).

Lastly, perhaps the "death knell" to Plaintiff's efforts to state any plausible TCPA liability theory here is that he incredibly suggests twice in his FAC, even after amending, that he needs "discovery" to do so. *See, e.g.,* Dkt. 8, ¶¶ 46, 95. The Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Rather, the well-recognized purpose of Rule 12(b)(6) is to "streamline [ ] litigation by dispensing with needless discovery and factfinding," *see Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989), and thus Plaintiff must file a complaint that states a plausible claim before he is entitled to discovery, *see Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010). And as one district court dismissing a similarly-defective TCPA complaint on this basis aptly held:

> As master[s] of [their] Complaint, it is [a TCPA plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc.,* 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015). *See also Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). Put in context of this case, Plaintiff's pled suggestions in his FAC that he "needs discovery to confirm who called him and how that person is related to" AdaptHealth reveals that he is merely "on an impermissible fishing expedition" and is not pleading actual facts in accordance with *Iqbal*/*Twombly*; and it further confirms he actually does "not know who called" him and thus that he has not adequately pled ***any*** TCPA liability theory against AdaptHealth, as required. *Scruggs*, 2020 WL 9348208, at *6–7, 10 (dismissing on these bases).

## IV. Any Dismissal Should Be With Prejudice.

Finally, federal district courts in this Circuit (including in this District) and elsewhere routinely dismiss complaints with prejudice pursuant to Rule 12(b)(6) where a plaintiff already had a chance to amend and amendment failed to cure the complaint's pleading deficiencies. *See, e.g., Warden v. Woods Servs.,* 2020 WL 1289194, at *3 (E.D. Pa. Mar. 17, 2020); *Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions").

Here, Plaintiff already amended. But despite being represented by counsel and having had the benefit of AdaptHealth's prior dispositive motion when doing so, he did not cure all the fatal defects AdaptHealth previously identified when amending; and in some ways he made those defects worse by adding more inconsistent allegations to his FAC that undermine his conclusions. In short, Plaintiff has already had two bites at the apple to try to plead a plausible claim. A third would be inappropriate and should not be permitted, and thus the FAC should be dismissed with prejudice.

## CONCLUSION

For all of the reasons above, the entire FAC should be dismissed with prejudice.

*/s/ Steven C. Tolliver, Jr.*
FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(*Pro Hac Vice* to be requested)
MANATT, PHELPS & PHILLIP, LLP

151 N, Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: 312-529-6300
jmcguinness@manatt.com
pheeringa@manatt.com

*Counsel for Defendant AdaptHealth Corp.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: September 17, 2026

*/s/ Steven C. Tolliver, Jr.*
STEVEN C. TOLLIVER, JR.

*Counsel for Defendant AdaptHealth Corp.*