**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DMITRY ZINGER, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAPTHEALTH CORP.,<br><br>Defendant. | CASE NO. 2:26-cv-04287-JMY<br><br>CLASS ACTION |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Despite being nearly twice as long as AdaptHealth's Motion to Dismiss (Dkt. 10), Plaintiff's rambling Opposition thereto (Dkt. 12) lacks any meaningful substance, and in the end it confirms that his First Amended Complaint ("FAC") is ripe for dismissal with prejudice for all the reasons AdaptHealth identified. In sum, the Opposition principally argues that: (1) texts qualify as "telephone calls" under Section 227(c) of the TCPA because the FCC and certain courts interpreting a different broader provision have so held; (2) Plaintiff has sufficiently pled receipt of a "telephone solicitation" or "telemarketing" call based on his rank speculation that the "purpose" of the subject texts was to encourage a purchase, though their actual content belies this conclusion; (3) the mere receipt of one text after a purported "stop" request is sufficient to allege an internal DNC rule violation; and (4) AdaptHealth may be held directly or vicariously liable under the TCPA for the subject texts merely because AdaptHealth was referenced in two of them. Plaintiff is wrong on all fronts.

## I. Text Messages Are Not "Telephone Calls" Under Section 227(c) of the TCPA.

Plaintiff's argument on Section 227(c) turns primarily on the flawed and incorrect premise that the phrase "telephone call" as used in Section 227(c)(5) carries the very same meaning as the word "call" as used in Section 227(b). *See* Dkt. 12 at 9-10. Not so. Among other things, this argument ignores one fundamental principle of statutory interpretation: when Congress uses different language in different provisions, courts must presume those differences are meaningful. *See Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 536 (7th Cir. 2026). *See also* Dkt. 10-1 at 10-11, 13 (collecting similar cases). At bottom, Congress purposefully chose to use the more restrictive phrase "telephone call" for Section 227(c)—not "call," "message," "communication," or "text message" (the latter being something that did not even exist in 1991, when that provision was enacted). Well-settled statutory construction principles mandate that this deliberate choice be honored here.

As the Seventh Circuit aptly recognized in *Steidinger*, Congress knows how to refer to both "calls" and "messages" when it intends to reach both forms of communication when legislating in

this space. For example, other subsections of the TCPA consistently uses the term "telephone solicitation," which the TCPA's implementing regulations defines as "'the initiation of a *telephone call or message.*'" *Steidinger*, 182 F.4th at 536 (emphasis original). But, on its face, Section 227(c)(5) "***only*** creates a private right of action for the receipt of more than one 'telephone call' within a 12-month period. ***It doesn't mention telephone messages***, nor does it use the more encompassing term, telephone solicitation." *Id.* (emphasis added); *see also Lowrey v. Twilio, Inc.*, *et al.*, 2026 WL 2958730, at *5-6 (W.D. Va. Oct. 1, 2026) (ruling similarly and dismissing in part on this basis).

Another federal district court recently adopted this same sound reasoning in *Rush v. SelectQuote Insurance Services, Inc.*, 2026 WL 2495598, at *4 (W.D. Mo. July 30, 2026). Quoting *Steidinger*, the *Rush* court similarly recognized that Sections 227(b) and 227(c)(5) "contain different language" and that subsection (b)'s private right of action is materially broader than the narrower one Congress enacted in subsection (c). The court noted that plaintiffs improperly "isolate[d] the word 'call'" while ignoring §227(c)(5) refers to a "telephone call," whereas § 227(b) broadly regulates "any call." *Id*. The court therefore held that the textual differences between these provisions "both explain[] and support[]" the conclusion that § 227(c)(5) does not apply to texts. *Id.*[1] Ruling differently here and reading § 227(c)(5) to encompass texts would effectively rewrite the statute and improperly render Congress' deliberate distinction between "calls" and "messages" meaningless.

Moreover, text messaging did not exist when the TCPA was enacted in 1991; thus, Congress could not have understood "telephone call" to encompass texts back then. Dkt. 10-1 at 6-7 (citing *Loper*, *Facebook*, *King*, *Stockdale*, *Steidinger*, *David*). Rather, the ordinary meaning of a "telephone

[1] *See also Card v. R.J. Reynolds Tobacco Holdings, Inc.*, 2026 WL 2673068, at *1-3 (M.D.N.C. Sept. 3, 2026) (same, noting that "if it had been the intent to include all types of communications, Congress more simply could have used the broader term 'call' as it did in § 227(b), rather than 'telephone call' as it did in § 227(c)(5).") (citing *Steidinger*); *Brown v. Hursh Grp., LLC*, 2026 WL 2906613, at *3 (D. Colo. Sept. 28, 2026) (ruling similarly, dismissing with prejudice on this basis).

call" in 1991 referred to an ***audible voice*** (*i.e.,* audio/sound) communications using a telephone—***not written*** messages transmitted digitally. *See* Dkt. 10-1 at 12, n.6 (citing *Fashion Nova, James, Stockdale, Steidinger*); *Radvansky v. 1st Class Medical*, 2026 WL 2858562, at *3 (D. Colo. Sept. 23, 2026) (citing *Steidinger*). And while phone technology may have changed, it is "***undoubtable that [even] in today's parlance, 'telephone call' means something entirely different from 'text message***.' [] If someone says, 'I'm going to text you,' the listener would not expect a telephone call. Likewise, if someone says, 'I'm going to call you,' the listener would not expect a text. Therefore, the plain meaning of 'telephone call' [used in § 227(c)(5)] excludes text messages." *Lowrey*, 2026 WL 2958730, at *6 (quoting *Jones v. Blackstone Med. Servs., LLC,* 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025), *aff'd by Steidinger*) (internal citations omitted, emphasis added, cleaned up)).

Tacitly recognizing all this, Plaintiff invites this Court to blindly defer *inter alia* to FCC interpretations, the Third Circuit's pre-*Loper*/*McLaughlin* rulings, and certain flawed district court decisions on this issue (at least two of which are from the Seventh Circuit and thus were abrogated by *Steidinger*)—most predating *Steidinger* and all involving issues of Article III standing (not an issue raised by the Motion at bar) and/or interpretations of § 227(b), which is a much different and broader provision than § 227(c). *See* Dkt. 12 at 8-13. The Court should decline for several reasons.

For one, as the Motion notes, and as the Opposition ignores, the FCC's limited rulemaking authority under § 227(c) ***expired*** in 1992, before texting existed, and thus any regulations or guidance issued after that authority expired are of no moment. *See* Dkt. 10-1 at 7. *See also Anthony v. Brian Mktg. Grp*., 2026 WL 2685650, at *6 (S.D. Fla. Sept. 11, 2026) (recognizing any FCC interpretations after its rulemaking authority expired in 1992 "exceeds the agency's statutory authority under the TCPA"). Put differently, the issue before this Court is one of pure statutory interpretation. Only Congress determines the scope of a federal cause of action; and courts are no longer bound by an

agency's interpretations of statutes after *Loper*/*McLaughlin* in any event. *See* Dkt. 10-1 at 7-8. The FCC and courts lack the power to expand private rights of action under the TCPA beyond those expressly authorized by Congress. *See Alexander v. Sandoval,* 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Put simply, the FCC's views are irrelevant here.

For another, numerous courts have correctly recognized that decisions interpreting "call" under § 227(b) do not control and have no bearing on interpreting "telephone call" under § 227(c). *See* Dkt. 10-1 at 12-13 (collecting cases); *see also Steidinger,* 182 F.4th at 536-539 (distinguishing between and explaining why cases interpreting § 227(b) are inapplicable to interpreting § 227(c)); *Card,* 2026 WL 2673068, at *1-3 (same); *Rush,* 2026 WL 2495598, at *4 (same). This Court should rule similarly, and Plaintiff's Opposition offers no authority compelling a contrary result.

Indeed, while Plaintiff suggests the holdings in *Dominguez* and *Gager* are controlling and/or persuasive and not limited to just § 227(b) (*see* Dkt. 12 at 8-9) and that Sections 227(b) and (c) are essentially the same (*id*. at 8-11), he is wrong on both points. In reality, the Seventh Circuit is "the ***only*** circuit [court] to specifically address § 227(c)(5)" and whether texts are "telephone calls" thereunder to date. *Rush,* 2026 WL 2495598, at *4 (emphasis added). The Third Circuit has <u>not</u> done so, despite what Plaintiff implies. As such, *Dominguez* and *Gager* are inapposite and do not control.

Plaintiff's citation to *Campbell-Ewald Co. v. Gomez* is likewise of no moment. *See* Dkt. 12 at 8-9. There, "the Supreme Court 'assumed, but did not decide,' that a text message falls into a broader prohibition of 'any call' under Section 227(b) because the issue was not disputed," and it was not interpreting § 227(c). *Irvin v. Sonic Indust. Serv., LLC,* 2026 WL 1098403, at *2 (N.D. Ga. Apr. 20, 2026) (quoting *Davis v. CVS Pharm., Inc.,* 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025)). *See also Steidinger*, 182 F.4th at 538 (ruling similarly). Thus, *Campbell-Ewald* also does not control.

Another "fundamental canon of statutory construction" discussed in the Motion that the Opposition ignores is that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Dkt. 10-1 at 12-13 (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (emphasis added)). This canon is of critical import here, as the word "call" is used in ***different contexts*** in Sections 227(b) and (c): in the former it is used as a ***verb***, whereas in the latter it is used as a ***noun***. *See* Dkt 10-1 at 13 (citing *James*, *Davis* and *Rush*). For this reason alone, relying on cases like *Dominguez*, *Gager,* and others cited in the Opposition (including the Ninth Circuit's decisions in *Satterfield* or *Howard*[2]), which only interpret "call" as used in the context of § 227(b),[3] to interpret "telephone call" as used in the different context of § 227(c) is like comparing apples to oranges. *See id. See also FCC v. AT&T Inc.,* 562 U.S. 397, 402-403 (2011) (noting different parts of speech sharing a root word "may have meanings as disparate as any two unrelated words"). The overall statutory scheme also demonstrates Congress has consistently drawn technology-specific distinctions within the TCPA, where different communication technologies are afforded different treatment. *See* Dkt. 10-1 at 9-11, n.1 (collecting authorities). Such is true for texts.

Though Plaintiff tries to sweep this point under the rug (*see* Dkt. 12 at 17, 33), that "text message" appears in later amendments to other TCPA provisions only underscores that "Congress

---

[2] Despite what Plaintiff suggests (*see* Dkt. 12 at 10, 22), the *Howard* court did not interpret "telephone call" under § 227(c). In fact, Judge Collins of the Ninth Circuit, who penned the majority's opinion in *Howard*, expressed skepticism during oral argument as to whether texts qualify as a "telephone call" under the TCPA, correctly recognizing there is a "***striking***" and "***obvious textual difference***" between the term "call" and "telephone call" and that the latter "sounds a lot more like ***something involving voice***." *See* https://www.youtube.com/watch?v=_yPTvvRQRjI (at ~11:51) (last visited Oct. 8, 2026). While not reflected in the published decision, Judge Collins' comments are strong evidence the Ninth Circuit never intended its reasoning there as to the meaning of "call" would also apply to the term "telephone call"—let alone that its prior interpretations of "call" as used in § 227(b) would apply across the ***entire*** TCPA. Also, notably, Judge Collins' comments echo the Seventh Circuit's holding in *Steidinger*. *See* 182 F.4th at 536 & 538 ("in 1991, ***a 'telephone call' referred to communication via sound***") (citations omitted, emphasis added).

[3] *Cf. Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 (3d Cir. 2018) (assuming, without deciding, that text messages are covered under 227(b), not addressing "telephone call" under § 227(c)); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 (3d Cir. 2013) (citing *Satterfield* to interpret § 227(b)).

understood the pertinent distinction and legislated mindful of the distinction" and thus ***intentionally*** omitted texts from § 227(c)'s scope. *El-Sayed v. Naturopathica Holistic Health, Inc.,* 2025 WL 2997759,at *2 (M.D. Fla. Oct. 24, 2025). *See also Lowrey*, 2026 WL 2958730, at *6 (ruling similarly). Congress knows the difference and could amend § 227(c) to include texts. It has not.

Lastly, while AdaptHealth acknowledges that other courts (including in this District) have reached different conclusions, none of those or the Plaintiff's other pre-*Steidinger* authorities cited on this point compels a contrary ruling here. *See generally* Dkt. 12 (citing *Cole*, *Wilson*, *Newell v. Children's Dental*, *Rabbitt, Mujahid, Newell v. RxLink*, *Pero*, *King, Alvarez* and *Rubin*). On the one hand, Plaintiff's reliance on *Mujahid* and *Rabbitt* is misplaced simply as those cases were abrogated by *Steidinger* and thus they carry no persuasive weight. On the other, all those courts interpreted the broader language of "call" in § 227(b) as applying with equal force to the more limited language of "telephone call" in § 227(c) (or relied on other authorities so holding) and thus concluded Congress intended "call" to include <u>all</u> communications to and from a phone—which is simply incorrect.[4]

Again, such a myopic analytical approach (i) ignores the plain dispositive language of the statute and improperly conflates or ignores Congress' deliberate word choice, (ii) would sweep into § 227(c)'s scope faxes, emails and other communications governed by other provisions or not at all, and (iii) thus would improperly rewrite the plain language or render large portions of the statute superfluous. *See* Dkt. 10-1 at 13-14 (citing *Radvansky* and *Stockdale*). This Court should not make the same analytical missteps. In short, the deeply-flawed district court decisions upon which Plaintiff

[4] Plaintiff's heavy reliance on *Children's Dental*, *Rubin*, and *Pero* is particularly misplaced. That is because holdings in each case are (respectfully) flawed because they rest on (i) *Gager*, *Wilson v. Better Mortgage*, *King*, *Campbell-Ewald, Alvarez, Dominguez, Newell v. RxLink*, and/or *Satterfield*, which either suffer from the same and other analytical flaws, do not directly address the issue, merely assumed without analysis that texts are "calls" under § 227(c), and/or are inapposite because they interpret § 227(b); (ii) the FCC's prior rulings issued after its rulemaking authority expired; (iii) inapposite decisions that predate *McLaughlin* and *Loper*; and (iv) erroneous assumptions that other Circuit courts had found texts to be "telephone calls" under § 227(c) (in fact, none have to date).

relies are (respectfully) unpersuasive, were wrongly-decided, and thus should not be applied here. *See also Radvansky v. 1-800-FLOWERS.COM, Inc*., 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) (discussing these and other "inherently flawed" contrary decisions on this issue). And since Plaintiff's claims turn entirely on alleged texts, his whole FAC must be dismissed as a matter of law.

## II. <u>Plaintiff Fails to Plausibly Allege Other Essential Elements of His TCPA Claims.</u>

As to the elements of his DNC claims, Plaintiff argues he alleges receipt of a "telephone solicitation" or "telemarketing" call, but this is unsupported by any pled facts. *See* Dkt. 12 at 35-40.

To be sure, the content of the subject texts themselves indicates they relate to ***already completed*** transactions. *See* Dkt. 10-1 at 16-18. Nowhere in the content do they involve marketing or discuss a purchase. Plaintiff ignores this content and instead simply speculates that it is possible "one purpose" was to "to generate sales, increase traffic to Defendant's website and its affiliate, and promote Defendant's products and brand." Dkt. 12 at 37. Such is not the law. Under Plaintiff's theory, any message referencing a prior transaction, invoice, or company website could be recast as telemarketing because the recipient might thereafter be exposed to products or services offered by the sender. Yet, courts have found that content ***and*** purpose, not purpose alone, is what matters here. *See, e.g., Dahdah v. Rocket Mortg., LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023).

In any event, "possible" is not the same as "plausible" under *Iqbal*/*Twombly*. And Plaintiff tellingly cites no authority for the proposition that a facially informational or transactional message about a completed transaction that did not encourage or solicit the recipient to make a purchase (like those at issue here) magically transforms into an actionable "telephone solicitation" or "telemarketing" call just because it may have been sent to the wrong person. That is because there is none. Moreover, Plaintiff must plead plausible ***facts***, not mere conclusions, on this essential DNC claim element to avoid a complete dismissal on this basis. *See id.*; *see also Gillam v. Reliance First Cap., LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023); Dkt. 10-1 at 15-16 (collecting cases).

Plaintiff failed to do so, and his Opposition does not show where any such facts were pled in the FAC. That is because none were pled. And this omission is further fatal to his entire FAC. *See id*.

Plaintiff's reliance on *Suescum*, *Coffey*, *Rockwell*, *Miholich* and *Chesbro* does not alter this result. *See* Dkt. 12 at 36-37. In each, the plaintiffs were encouraged by the subject communications to make future purchases. In contrast, nothing in the content or context of the alleged texts here indicates an intent to solicit a ***future*** sale to ***Plaintiff*** (as opposed to providing information about a prior transaction). His rank speculation on their "purpose" is not a fact to be accepted as true.

Plaintiff's attempt to salvage his internal DNC claim in Count II fares no better. *See* Dkt. 12 at 40-45. Plaintiff attempts to convert his allegations about a purported "stop" request to a separate legal entity into a *per se* violation of the internal regulations. But the TCPA and the applicable regulations impose no such absolute standard, and Plaintiff conflates two distinct concepts: (1) whether a defendant continued calling after a purported opt-out request, and (2) whether the defendant failed to institute and maintain the requisite internal procedures. However, myriad courts have held that the latter—not the former—is the only legal basis for liability under the internal DNC regulations. *See* Dkt. 10-1 at 19-20 (citing cases). As a matter of well-settled law, therefore, allegations that calls continued after a stop request do not *automatically* establish a defendant lacked compliant internal procedures, or it failed to train personnel or have an internal DNC list. *Id.*

At bottom, Plaintiff alleges no facts in the FAC concerning AdaptHealth's alleged policies, training, recordkeeping, or compliance systems, and he offers only conclusory statements. However, Plaintiff must do more than "simply recite[] the requirements of 47 C.F.R. § 64.1200(d) and conclusorily allege[] that they were violated" to avoid a dismissal here. *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012)). Instead of showing where such facts exist (as none do), Plaintiff's Opposition largely ignores AdaptHealth's cited authorities on this issue, and

essentially asks the Court to infer AdaptHealth must not have maintained any procedures at all because he allegedly received one call from a different entity after a stop request. *See* Dkt. 12 at 40-42. Yet, myriad courts have correctly recognized such massive inferential leaps are insufficient to state such a claim under *Iqbal*/*Twombly*. *See* Dkt. 10-1 at 19-20 (citing cases). So should this Court.[5]

## III. Plaintiff Fails to Plausibly Allege a Theory of TCPA Liability.

Finally, Plaintiff essentially argues that because the communications referenced AdaptHealth, AdaptHealth necessarily initiated them and thus is either directly or vicariously liable under the TCPA. *See* Dkt. 12 at 45-53. Not so. Under Plaintiff's "either/or" theory, any company whose name is mentioned during a call or in a text message could automatically be subjected to expensive discovery and litigation, even absent factual allegations showing that the company itself initiated, directed, authorized, or controlled the subject calls. That is the type of speculative pleading the edicts in *Twombly* and *Iqbal* were designed to prevent. A contrary ruling here would invite fishing expeditions against innocent defendants based solely on conjecture and perceived association, which is precisely why numerous federal courts have held such allegations (in fact, nearly the same allegations Plaintiff offers) do not plausibly state any TCPA liability theory. *See* Dkt. 10-1 at 21-29. A text saying "Jeff Bezos from Amazon" does not mean Jeff Bezo sent it, or that Amazon did.

Plaintiff attempts to mischaracterize AdaptHealth's Motion as merely a "we didn't do it" defense (*i.e.*, that it is disputing facts). Dkt. 12 at 45. Not true. Rather, AdaptHealth is pointing out that the ***FAC lacks the required factual content*** necessary to nudge his claims "across the line from conceivable to plausible" under federal pleadings standards. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's Opposition attempts to bridge this chasm by rhetorically asking, "who

[5] Contrary to what Plaintiff seemingly contends, calls prior to the "stop" request are irrelevant. Logically, if the defendant ignoring a stop request was the violation, only calls after that would be actionable. As Plaintiff only alleges receipt of one additional text, and "more than one" is needed per the plain language of the statute (*see* Dkt. 10-1 at 21), his internal DNC claim fails regardless.

did, then?" Dkt. 12 at 45. But that assertion merely attempts to improperly flip the pleading burden from Plaintiff to AdaptHealth. The issue at bar is whether ***Plaintiff*** has alleged facts ***in his FAC***, in accordance with *Iqbal*/*Twombly,* permitting the Court to reasonably infer that AdaptHealth itself physically sent the texts (direct liability) or is otherwise legally responsible for them (vicarious liability). He has not. Nor is he entitled to the benefit of discovery to do so. *See* Dkt. 10-1 at 29.

Further, even if Plaintiff had plausibly alleged facts from which to infer that the texts were sent directly by AdaptHealth (he has not), Plaintiff simultaneously alleges the texts may have been sent by AdaptHealth, by affiliates, by vendors, by agents, by entities within AdaptHealth's corporate organization, or by other persons that discovery may identify. Those allegations underscore the speculative nature of Plaintiff's improper (and inherently implausible) "either/or theory of liability" that myriad courts have flatly rejected when dismissing nearly identical claims. *See* Dkt. 10-1 at 24 (citing, *inter alia*, *Cosenza*). Plaintiff's Opposition gives this Court no reason to rule any differently.[6]

Finally, Plaintiff's fallback vicarious liability argument fails for the same reasons as his direct liability theory—*i.e.,* the FAC contains no allegations concerning any agency relationship between the sender and AdaptHealth, as is required to plead vicarious TCPA liability. Plaintiff's FAC fails to identify any alleged agent, allege facts demonstrating AdaptHealth's control over the sender's conduct, or plead facts supporting actual authority, apparent authority, or ratification. *See* Dkt. 10-1 at 28. Instead, Plaintiff merely asserts that discovery *may* reveal such relationships. *See* Dkt 12 at 50. But that is insufficient under *Iqbal*/*Twombly,* confirming Plaintiff does not know who actually texted him, and thus that he has not adequately pled <u>any</u> liability theory. *See* Dkt. 10-1 at 29 (citing *Scruggs*).

[6] The Opposition largely ignores the many on-point authorities cited in the Motion on this front (save for a few which are misconstrued) and instead mostly relies on a handful of outlier decisions that are distinguishable and unpersuasive for a number of reasons, and thus should not be applied here. *See* Dkt. 12 at 46-47 (citing *Bradshaw*, *Smith*, *Barry*, *Katz*, *Fridline*, *Stemke*, *Slominski*). Local briefing limits do not permit AdaptHealth to address here all of the ways this is so. As the Court will see, however, those cases stand in stark contrast to the weight of applicable authority cited in the Motion.

Dated: October 8, 2026

Respectfully submitted,

*/s/ Steven C. Tolliver, Jr.*
FREDERICK P. SANTARELLI (PA 53901)
STEVEN C. TOLLIVER, JR. (PA 327165)
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000 (phone)
(215) 977-1099 (fax)
FPSantarelli@elliottgreenleaf.com
sct@elliottgreenleaf.com

JOHN W. MCGUINNESS
(*Pro Hac Vice* to be requested)
A. PAUL HEERINGA
(*Pro Hac Vice* to be requested)
MANATT, PHELPS & PHILLIP, LLP
151 N, Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: 312-529-6300
jmcguinness@manatt.com
pheeringa@manatt.com

*Counsel for Defendant AdaptHealth Corp.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I am causing the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

Dated: October 8, 2026

*/s/ Steven C. Tolliver, Jr.*
STEVEN C. TOLLIVER, JR.

*Counsel for Defendant AdaptHealth Corp.*