**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DMITRY ZINGER, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADAPTHEALTH CORP.<br><br>Defendant. | Case No.: 2:26-cv-04287-JMY |

**PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## INTRODUCTION

Pursuant to the Court's October 16, 2026 Order (ECF No. 15), Plaintiff Dmitry Zinger responds to the Reply of Defendant AdaptHealth Corp. ("AdaptHealth") (ECF No. 13, "Reply"). The Reply misdescribes the Third Circuit's precedent, the decisions of this District, and several of its own authorities, ignores the content of AdaptHealth's messages and AdaptHealth's written confirmation of Plaintiff's stop request, and argues against a complaint Plaintiff did not file.

## ARGUMENT

### I. The Reply mischaracterizes the authorities holding that text messages are "calls" under section 227(c).

#### A. The Third Circuit and the courts of this District decided the question without making the assumptions Defendant alleges.

The Reply asserts that the Third Circuit in *Dominguez* merely "assum[ed], without deciding," that text messages are calls. (Reply at 5 n.3.) That is not what the Third Circuit said. It said: "Although the text of the statute refers only to 'calls,' we have held that, *under the TCPA*, that term encompasses text messages." *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 118 n.3 (3d Cir. 2018) (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013)) (emphasis added). The Third Circuit described that as its holding, and it stated the holding in terms of "the TCPA," not a single subsection. *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532 (7th Cir. 2026), on which the Reply principally relies, illustrates why that matters. Before reaching the question, the Seventh Circuit first concluded that its own prior statement that texts are calls "doesn't bear on the present issue." *Id.* at 537. The Seventh Circuit could take that step with respect to its own precedent. AdaptHealth asks this Court to take it with respect to the Third Circuit's.

Nor did the courts of this District "blindly defer" to the FCC or simply transplant section 227(b) holdings, as the Reply contends. (Reply at 3, 6 & n.4.) Each conducted its own statutory

analysis under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin*. In *Children's Dental*, Judge Murphy began with *McLaughlin*'s instruction that district courts "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation," examined the 1991 meaning of "telephone call," not merely "call," and concluded that "texting is just one such way 'to communicate with or try to get into communication with a person by a telephone.'" *Newell v. Children's Dental Health Assocs., LLC*, No. 25-5238, 2026 WL 927378, at *4 (E.D. Pa. Apr. 6, 2026) (quoting *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025), and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-54 (9th Cir. 2009)); *see id.* (agreeing that "the ordinary public meaning of 'telephone call' when the TCPA was enacted in 1991 was a communication made by telephone" (quoting *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025) (cleaned up))). The court expressly stated that it was "not bound by nor deferential to the FCC's interpretation of the TCPA," and found that interpretation "amply supported by the statute's text and purpose." *Id.* at *8.

Likewise, in *Pero*, Judge Savage acknowledged that "*Gager* predated *McLaughlin* and *Loper Bright*," and then conducted an independent analysis of the statutory text, reasoning that because "[t]he same phrases are included in both Sections 227(b) and (c)," courts "presume they have the same meaning." *Pero v. Brown-Daub Chevrolet of Nazareth*, No. CV 25-7016, 2026 WL 1747214, at *4 (E.D. Pa. June 17, 2026) (citing *Pereira v. Sessions*, 585 U.S. 198, 211 (2018), and *Cellco P'ship v. White Deer Twp. Zoning Hearing Bd.*, 74 F.4th 96, 105 (3d Cir. 2023)). *Pero* also expressly recognized that the out-of-circuit appellate decisions it surveyed analyzed Section 227(b), not Section 227(c), the opposite of the "erroneous assumption[]" the Reply attributes to it.

*Id.*; *contra* Reply at 6 n.4. And none of these decisions turned on Article III standing. *Contra* Reply at 3. Each decided, on a motion to dismiss, the precise question presented here.

The additional out-of-circuit district court decisions the Reply cites simply follow *Steidinger*. (Reply at 2-3 & n.1.) And *Steidinger* affirmed *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), *see Steidinger*, 182 F.4th at 534-35, a decision Judge Murphy had already considered and declined to follow. Indeed, the passage the Reply features from one of its new decisions traces to *Jones*'s observation that, "in today's American parlance, 'telephone call' means something entirely different from 'text message'." *Jones*, 792 F. Supp. 3d at 899; *see* Reply at 3. Judge Murphy rejected that same reasoning, explaining that *Jones* "focused the analysis on 'today's American parlance,'" whereas "the more expansive view of 'call' follows from correctly focusing on 1991." *Children's Dental*, 2026 WL 927378, at *6 (quoting *Jones*, 792 F. Supp. 3d at 899). AdaptHealth acknowledges that courts in this District have reached a different conclusion than its out-of-circuit authorities (Reply at 6), and it identifies no court in this Circuit that has adopted its reading. Nor is the rule confined to this District. Sitting by designation in the District of Delaware, Third Circuit Judge Bibas applied it to a section 227(c)(5) Do Not Call claim, holding that "[a] text message counts as a 'call.'" *King v. Bon Charge*, 823 F. Supp. 3d 508, 525 (D. Del. 2025). And while two of the decisions Plaintiff cited arose within the Seventh Circuit (Reply at 6), *Steidinger* does not bind any court in this Circuit.

**B. The Reply's textual arguments fail on the face of the statute.**

The Reply's central textual premise is that section 227(b) uses "call" as a verb while section 227(c)(5) uses "telephone call" as a noun, so the two cannot share a meaning. (Reply at 5.) But section 227(b) itself uses the identical noun phrase: it prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice." *Children's Dental*, 2026

WL 927378, at *5 (quoting 47 U.S.C. § 227(b)(1)(B)). Because "[t]he same phrases are included in both Sections 227(b) and (c)," the ordinary presumption of consistent meaning applies. *Pero*, 2026 WL 1747214, at *4. And the Reply still offers no answer to the point that, within section 227(c) itself, Congress used "calls" to describe telephone solicitations, a category that by definition includes any "telephone call or message," as even *Steidinger* acknowledged. (ECF No. 12 at 15 (citing *Steidinger*, 182 F.4th at 537).)

Nor should the Court discount *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026), based on a remark at oral argument. (Reply at 5 n.2.) A question from the bench is not a holding, and Plaintiff expressly identified *Howard* as a section 227(b) decision. (ECF No. 12 at 9.)

Next, the Reply asserts that Plaintiff "ignores" AdaptHealth's argument that the FCC's rulemaking authority under section 227(c) expired in 1992. (Reply at 3.) Plaintiff addressed this proposition directly. (ECF No. 12 at 32-33.) And the Reply's new authority on the point, *Anthony v. Brian Marketing Group*, 2026 WL 2685650 (S.D. Fla. Sept. 11, 2026), does not stand for what the Reply's parenthetical suggests. The language the Reply quotes, that an FCC interpretation "exceeds the agency's statutory authority under the TCPA," refers to the FCC's 2003 order extending Do Not Call protection to wireless subscribers. *Anthony* held that cell phone users are not "residential telephone subscriber[s]" protected by section 227(c) at all, and it did so in denying an unopposed motion for default judgment against a defendant that never appeared. *Id.* at *1-2, *6. The Reply's lead new decision adopted the same holding. *Lowrey v. Twilio, Inc.*, 2026 WL 2958730, at *6-7 (W.D. Va. Oct. 1, 2026) (citing *Anthony*). *Lowrey's* adverse holdings conflict with *King's* analysis of both text messages and residential use of cellular numbers. AdaptHealth does not ask this Court to go that far, and in this Circuit Judge Bibas allowed a section 227(c)(5)

claim to proceed where the plaintiff alleged that she used her cell phone as a residential line. *King*, 823 F. Supp. 3d at 525. Authorities whose reasoning would strip Do Not Call protection from cell phones altogether should not guide this Court. The expired authority argument also proves too much. The FCC did not establish the national Do Not Call registry until 2003. *See* ECF No. 12 at 32-33; *Pero*, 2026 WL 1747214, at *3 ("The FCC did not intrude on Congressional prerogative or exceed its mandate.").

Nor does *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001), help AdaptHealth. (Reply at 4.) Plaintiff does not ask the Court to allow a regulation to create a private right that Congress withheld. Congress itself created the right of action in section 227(c)(5), for a person who "has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed" under that subsection. 47 U.S.C. § 227(c)(5). *Sandoval* itself recognized that "when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable." 532 U.S. at 291. Section 227(c)(5) is such a statute. The only question here is what Congress meant by "telephone call," and the courts of this District have answered it for themselves.

## II. The FAC pleads the elements of both Do Not Call claims.

### A. The content of AdaptHealth's messages refutes its "completed transaction" theory.

The Reply contends that "the content of the subject texts themselves indicates they relate to already completed transactions." (Reply at 7.) The content says the opposite. The first message announced that AdaptHealth "has received a new order for you" and told Plaintiff to "call us." The second announced that AdaptHealth "has a new order for you that is ready to schedule," and instructed Plaintiff to "download our mobile app myAPP at https://adapthealth.com/myapp,"

because "once you enroll you will be able to self schedule." (FAC ¶ 32.) Nothing in those messages describes a completed transaction. They describe a "new" order that has not been scheduled, and they ask the recipient to take future steps—calling AdaptHealth, enrolling in its app, and scheduling—to bring it about. As to Plaintiff, moreover, there was no transaction at all: he had placed no order, was awaiting nothing from AdaptHealth, and had never requested information from it. (FAC ¶¶ 23-28.) The Reply itself contemplates that the messages may have been "sent to the wrong person." (Reply at 7.) A message about a transaction that, as to its recipient, does not exist is not transactional. (FAC ¶¶ 28, 30.)

Plaintiff's allegations of purpose therefore rest on the content and context of the messages, not "rank speculation." (Reply at 8.) "[N]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480, 483 (9th Cir. 2026) (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)). The Reply distinguishes the authorities on which Plaintiff relied on the ground that the plaintiffs there were "encouraged by the subject communications to make future purchases." (Reply at 8.) So was Plaintiff here: he was urged to call, enroll, and schedule an order he never placed for products that AdaptHealth sells. (FAC ¶¶ 20-21, 29, 32, 52.) In *Children's Dental*, Judge Murphy found it "plausible, at the pleading stage, that these texts were intended to persuade Mr. Newell to pay for defendant's services — not merely to use them." 2026 WL 927378, at *8. The same inference is plausible here. Indeed, the Reply's own lead authority rejected the same "limited view of what a 'telephone solicitation' is." *Lowrey*, 2026 WL 2958730, at *8. There, the defendants argued that messages that "merely noted that [the plaintiff] was representing an estate and suggested he should call a number for more information" were not

solicitations; the court disagreed, explaining that "[t]elemarketers cannot insulate themselves from TCPA liability by dividing a solicitation into a two-step process." *Id.* So too here.

### B. Plaintiff's stop request went to AdaptHealth, and AdaptHealth confirmed it in writing.

The Reply characterizes Plaintiff's stop request as one made "to a separate legal entity." (Reply at 8.) It was not. Plaintiff replied "STOP" to AdaptHealth's messages and then contacted AdaptHealth directly, and AdaptHealth's legal representative confirmed in writing that his number "has been added to AdaptHealth's internal Do Not Contact list." (FAC ¶¶ 32, 35-36, 39-41.) The separate entity is the sender of the later message: Oxygen One, which the FAC alleges operates within AdaptHealth's corporate organization. (FAC ¶¶ 37, 51, 55.) That is the point. AdaptHealth recorded the request, yet more than three months later it had not been honored across AdaptHealth's organization. (FAC ¶¶ 38, 42-45.)

Nor does Plaintiff "conflate" continued messaging with deficient procedures. (Reply at 8.) The FAC does not ask the Court to infer deficient procedures from a stray message. It identifies a specific procedural failure—a request that AdaptHealth itself confirmed it had recorded was not suppressed from AdaptHealth-related messaging channels—and a delay of more than three months, far beyond the ten-business-day outer limit AdaptHealth itself invokes. (FAC ¶¶ 38, 43-45; MTD at 20.) That is a far cry from *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012), where the plaintiff did "not allege that he made any such affirmative request to Defendant." And it is precisely the kind of allegation from which courts infer deficient procedures at the pleading stage. *See Eagle v. GVG Cap., LLC*, No. 22-CV-00638-SRB, 2023 WL 1415615, at *4 (W.D. Mo. Jan. 31, 2023). Even *Dahdah v. Rocket Mortgage, LLC*, on which the Reply relies, faulted the plaintiff for asking the court to infer deficient procedures "based solely on the allegation that calls were made after [plaintiff] made the do-not-call request," while recognizing that

complaints alleging facts tying the failure to honor an opt-out to deficient procedures had been held sufficient. 2023 WL 5941730, at *4 (E.D. Mich. Sept. 12, 2023). The specifics of AdaptHealth's internal systems are indeed within AdaptHealth's exclusive control. (FAC ¶ 46.)

Finally, the Reply's new contention that messages preceding the stop request are "irrelevant" (Reply at 9 n.5) cannot be reconciled with AdaptHealth's own motion. AdaptHealth argued that "[t]he 'violation of the [internal DNC] regulations' is the initiation of the phone call without having implemented the minimum procedures." (MTD at 19 (quoting *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009)).) The Reply now posits the opposite: "if the defendant ignoring a stop request was the violation, only calls after that would be actionable." (Reply at 9 n.5.) AdaptHealth cannot have it both ways. Under the standard AdaptHealth itself advanced, each telemarketing message is a violation, and Plaintiff alleges three such messages within twelve months. (FAC ¶¶ 31-32, 37-38, 44-45; ECF No. 12 at 44-45.)

## III. The FAC does not rest on AdaptHealth's name alone.

The Reply's hypothetical, "[a] text saying 'Jeff Bezos from Amazon' does not mean Jeff Bezo [sic] sent it, or that Amazon did" (Reply at 9), attacks a complaint Plaintiff did not file. Plaintiff does not rely on the appearance of AdaptHealth's name alone. The FAC alleges that the messages identified AdaptHealth as the sender, announced an AdaptHealth order, directed Plaintiff to call AdaptHealth at a specified number during specified business hours, linked to AdaptHealth's own website to enroll in AdaptHealth's own app, and, when Plaintiff replied "STOP," confirmed that he had been unsubscribed. (FAC ¶¶ 32-33.) And when Plaintiff contacted AdaptHealth about the messages, AdaptHealth's legal representative responded by confirming that his number had been added to AdaptHealth's internal Do Not Contact list. (FAC ¶¶ 35-36, 40.) Based on those facts, the FAC alleges that AdaptHealth sent the messages through a messaging system it operated.

(FAC ¶¶ 31, 33-34.) It would be implausible to infer AdaptHealth's alternative proffered in the reply, that the calls were sent by someone impersonating AdaptHealth. Drawing that inference does not "flip the pleading burden." (Reply at 10.) It is the pleading standard.

AdaptHealth's own authority identified the allegations that suffice. In *Smith v. Direct Building Supplies, LLC*, No. CV 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021), a court in this District identified the allegations that would suffice to plead direct liability, including allegations "that Direct Building Supplies' name appeared in the caller ID on Smith's cellular phone, the persons with whom Smith spoke identified themselves as representatives of Direct Building Supplies, or the services these persons attempted to sell were construction or home contracting services." The FAC pleads the equivalent of each, and more in the form of analogous indicia of direct liability, including AdaptHealth's name, order information, contact number, proprietary application, and its subsequent acknowledgment. (ECF No. 12 at 46-47.) The Reply instead relegates *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022), another decision from this District, to a footnote, labeling it an "outlier." (Reply at 10 n.6.) That footnote also faults Plaintiff for relying on decisions it identifies as *Stemke* and *Slominski*, which appear nowhere in Plaintiff's Opposition. (*Id.*; *see generally* ECF No. 12.)

The Reply also contends that Plaintiff "simultaneously alleges the texts may have been sent by AdaptHealth, by affiliates, by vendors, by agents, by entities within AdaptHealth's corporate organization, or by other persons that discovery may identify." (Reply at 10.) The FAC alleges no such thing as to the February 12 messages. It alleges that AdaptHealth sent them. (FAC ¶¶ 31-34.) The FAC's references to affiliates and vendors appear in its description of AdaptHealth's failure to maintain procedures across its organization, its class definitions, and its prayer for relief. (ECF

No. 12 at 50 (citing FAC ¶¶ 44, 46, 75, 88, 95).) That is nothing like *Cosenza*, where, as AdaptHealth itself described it, the only allegation suggesting direct liability was that "Defendant and/or its agents transmitted unwanted telephone calls to Plaintiff." (MTD at 24 (quoting *Cosenza v. Nice North America, LLC*, 2026 WL 2248829, at *5 (C.D. Ill. Aug. 4, 2026)).) And to the extent the FAC pleads in the alternative, the Federal Rules expressly permit it. FED. R. CIV. P. 8(d)(2).

Finally, as to vicarious liability, Plaintiff's primary theory is that AdaptHealth sent the messages itself. To the extent any message was transmitted by another entity, the FAC alleges that the May 31 message came from Oxygen One, a plausible inference based upon the pleading that Oxygen One is an entity within AdaptHealth's corporate organization, after AdaptHealth had actual knowledge of Plaintiff's request. (FAC ¶¶ 37, 41, 51, 55.) At the pleading stage, "[e]xplicit pleading of an agency relationship is not required," *Harrison v. Humana, Inc.*, No. 3:24-cv-00262-GNS, 2024 WL 4828737, at *3 (W.D. Ky. Nov. 19, 2024), and facts pointing to an "apparent relationship" suffice, *Barry v. Firstsource Sols. USA, LLC*, No. 3:24-CV-00648-GNS, 2025 WL 1762289, at *2 (W.D. Ky. June 25, 2025).

**CONCLUSION**

For these reasons and those stated in Plaintiff's Opposition (ECF No. 12), AdaptHealth's motion to dismiss should be denied in its entirety.

Dated: October 16, 2026 *<u>/s/ Andrew Roman Perrong</u>*

Andrew Roman Perrong, Esq. (PA Bar 333687)
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

October 16, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.