Case 5:26-cv-04286-JFL Document 20-1 Filed 10/21/26 Page 1 of 19

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARVIN DOVBERG, *individually, and on behalf of a class of all persons and entities similarly situated*,<br>Plaintiff,<br><br>v.<br><br>HALLER ENTERPRISES, INC.,<br>Defendant. | : | No. 5:26-cv-4286 |

**<u>O P I N I O N</u>**
**Motion for Judgment on the Pleadings, ECF No. 15 – Denied**

**Joseph F. Leeson, Jr.** **October 21, 2026**
**United States District Judge**

## I. INTRODUCTION

Plaintiff Marvin Dovberg filed the present action, alleging violations of the Telephone Consumer Protection Act ("TCPA"). Defendant Haller Enterprises, Inc. filed an Answer to the Complaint with affirmative defenses. Haller now moves for judgment on the pleadings, maintaining that Dovberg's claims fail as a matter of law and fail to state a claim. For the following reasons, the Court denies Haller's Motion for Judgment on the Pleadings.

## II. BACKGROUND

Dovberg received two unsolicited text messages from Haller on June 4, 2026. *See* Compl ¶ 22, ECF No. 1. Dovberg's cell phone "number has been registered on the National Do Not Call Registry for at least thirty-one (31) days prior to the text messages[.]" *Id.* ¶ 20. Dovberg uses his cell "phone number for personal, residential, and household purposes." *Id.* ¶ 19. Dovberg provided pictures of both text messages. *See id.* ¶ 22. The first text message provided that it was

from “Haller Enterprises,” and reminded Dovberg that “if anyone in your circle needs [Haller’s] services, we’d love to take great care of them[,]” and offered “up to $250 when their job is complete—and your referral will get a discount on their first service!” *Id.* The second text message sent another reminder from “Haller Enterprises,” to not “forget to refer your friends and family! You could earn up to $250 when their job is complete!” *Id.* Dovberg had not used Haller’s services since the summer of 2022 and did not give Haller permission to continue contacting him. *See id.* ¶ 23. Haller sent the messages from the telephone number 717-482-9669, which denoted the carrier of record as Telnyx, and said that the caller name delivery (“CNAM”) was “MIDDLETOWN, PA,” not Haller itself. *Id.* ¶¶ 27–28. “Telnyx provides its customers, and any applicable resellers, the ability to set the CNAM result accurately to reflect their own name as desired, but if the customer does not elect such a CNAM, their default CNAM customer setting is to transmit the geographic location of the telephone exchange for the calling telephone number, and not the caller’s name[.]” *Id.* ¶ 29. Dovberg could not use his caller identification (“Caller ID”) information to determine who sent the message. *See id.* ¶ 30. Dovberg did not want to receive the text messages, and “found the text messages frustrating, annoying, and intrusive.” *Id.* ¶¶ 32–39.

Dovberg filed the putative class action on June 22, 2026. *See* Compl. He alleged two classes. *See* Compl. ¶¶ 43–58. First, the “National Do Not Call Registry Class,” consisting of:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of [Haller] encouraging the purchase of [Haller’s] goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

Compl. ¶ 43. Second, the “Telemarketing Caller ID Class,” consisting of:

> All persons within the United States to whom: (1) [Haller] (or a third-party acting on behalf of [Haller]) sent (2) two or more telemarketing calls or text messages in a 12-month period, (3) which either (a) did not transmit a CPN or ANI at all, (b) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, or (c) was made without the transmission of caller identification information that included either CPN or ANI and [Haller's] or telemarketer's name, (4) within the four years prior to the filing of the Complaint.

*Id.* With the putative classes, Dovberg brought two claims. First, a claim for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c), on behalf of Dovberg and the National Do Not Call Registry Class. *See id.* ¶¶ 59–63. Second a violation of the TCPA, 47 U.S.C. § 227 & 47 C.F.R. § 64.1601(e)(1), on behalf of Dovberg and the Telemarketing Caller ID class, brought under 47 U.S.C. § 227(c)(5). *See id.* ¶¶ 64–70. Haller filed an Answer with affirmative defenses on September 18, 2026. *See* ECF No. 14.

Haller filed a Motion for Judgment on the Pleadings on September 23, 2026. *See* Mot., ECF No. 15; *see also* Mot. Mem., ECF No. 15-1. Dovberg filed a Response in Opposition on October 7, 2026. *See* Resp., ECF No. 18. Haller filed a Reply on October 14, 2026. *See* Reply, ECF No. 19.

## III. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings – Review of Applicable Law

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In deciding a motion for judgment on the pleadings under Rule 12(c), the Court considers the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, matters of public record, and indisputably authentic documents attached to the motion—provided the claims are based on these documents." *Doe v. Archdiocese of Phila.*, No. 20-3024, 2021 U.S. Dist. LEXIS 38426, at *6–7 (E.D. Pa. Mar. 2, 2021). *See also*

*Vacanti v. Apothaker & Assocs., P.C.*, No. 09-5827, 2010 U.S. Dist. LEXIS 120109, at *6 (E.D. Pa. Nov. 12, 2010) (explaining that the notable difference between the standard under 12(b)(6) and 12(c) is "that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings" (internal quotations omitted)). "Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. [The court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (internal citations omitted).

**B. Telephone Consumer Protection Act**

The TCPA is a consumer protection statute intended to protect consumers from invasions of privacy arising from unsolicited phone calls and advertisements. *See* 47 U.S.C. § 227; *see also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 149 (2025) ("The TCPA protects businesses and consumers from intrusive telemarketing communications."). The TCPA consists of two subsections, each of which contains a private right of action: (1) Section 227(b), the automated telephone equipment provision, and (2) Section 227(c), the do-not-call provision. *See* 47 U.S.C. §§ 227(b)(3), (c)(5); *see also McLaughlin*, 606 U.S. at 149. Section 227(c) authorizes the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Those regulations are prescribed and updated by the Federal Communications Commission (FCC). *See* 47 C.F.R. § 64.1200. Congress authorized the FCC to create and maintain a national database of consumers who choose to register their residential phone numbers on the national do-not-call registry. *See* 47 U.S.C. § 227(c)(3).

The TCPA provides a private right of action for individuals who have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5). One regulation at issue here, 47 C.F.R. § 64.1200(c)(2), forbids "any telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" *Id.* An individual may "receive up to $500 in damages for each such violation" or treble damages if the violation was willful. 47 U.S.C. § 227(c)(5)(B)–(C). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4).

To state a claim under Section 227(c) of the TCPA, plaintiffs "must plead that (1) they receive[d] multiple calls within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the [do-not-call l]ist." *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021) (citing *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020)).

Additionally, the FCC sets caller ID standards pursuant to the TCPA by and through regulations. These regulations provide that:

> Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.
>
> (1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.

> (2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information.

47 C.F.R. § 64.1601(e).

## IV. ANALYSIS

Haller makes three primary arguments in the Motion for Judgment on the Pleadings. First, Haller maintains that text messages are not telephone calls and are thus not covered by the TCPA's private right of action in Section 227(c)(5). *See* Mot. Mem. 4–11. As part of this argument, Haller alleges that Congress amended the TCPA to include text messages in Section 227(e). *See id.* at 9. Second, Haller contends that Dovberg's do-not-call claim fails because his cell phone is not "residential." *Id.* at 11–16. Third, Haller asserts that Dovberg's caller ID claim fails because there is no private right of action in Section 227(c)(5) for caller ID violations. *See id.* at 16–23. Haller also alleges that Dovberg's caller ID claim fails because Haller identified itself in the text messages. *See id.* at 20–21. Upon reviewing the pleadings, the Court disagrees. "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). The Court construes the TCPA liberally and denies the Motion.

### A. Text Messages under the TCPA

The Court finds that Section 227(c)(5) of the TCPA provides a private right of action against unsolicited text messages. Notably, three courts in this District have found, after performing independent statutory analyses, that the "telephone call" language in Section 227(c)(5)'s private right of action includes text messages. *See Newell v. Children's Dental Health Assocs., LLC*, No. 25-5238, 2026 WL 927378, at *7 (E.D. Pa. Apr. 6, 2026) ("Understanding calls to include texts under the TCPA is consistent with the statute's stated purpose: a consumer protection law designed to protect individuals' privacy."); *Pero v. Brown-Daub Chevrolet of*

*Nazareth*, No. 25-7016, 2026 WL 1747214, at *5 (E.D. Pa. June 17, 2026) ("Considering the statutory language, the FCC regulations, and the decisions of an overwhelming majority of courts, we hold that a text message is a call for purposes of 47 U.S.C. § 227(c)."); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 WL 916582, at *1 n.1 (E.D. Pa. Mar. 23, 2026) ("[N]othing in the text, structure, or purpose of the TCPA suggests the barring of text messages under § 227(c) . . . [the Court] conclude[s] that § 227(c) includes text messages within its definition of a 'telephone call.'"); *see also, e.g., Shelton v. Pro Source Lending Grp. LLC*, No. 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025) (acknowledging that text messages were calls based upon the definition of the word "call" but not performing a statutory analysis).

Other courts in the Third Circuit have found the same, citing out-of-Circuit case law. *See Owen-Brooks v. Better Homes & Gardens Real Est., LLC*, No. 25-15801, 2026 WL 2455150, at *4 (D.N.J. Aug. 21, 2026) (declining to dismiss a TCPA claim under Section 227(c)(5) and finding "[S]ection 227(c) protects against unsolicited text messages"); *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 649 n.5 (D.N.J. 2025) ("Text messages are considered 'calls' for these purposes.") (citation omitted); *see also, e.g.*, *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637 (S.D.N.Y. 2025) ("The Court holds, in accord with a growing consensus of case law, that [Section] 227(c) of the TCPA applies to text messages for multiple reasons."); *Wilson v. MEDVIDI Inc.*, No. 25-3996, 2025 WL 2856295, at *3–4 (N.D. Cal. Oct. 7, 2025) ("The Court concludes that a 'telephone call' as used in 47 U.S.C. § 227(c) encompasses the types of text messages Plaintiff complains of."); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022) ("Because 'telephone call' in subsection (b) includes a text message. . . [a] 'telephone call' in subsection (c) includes a text message also.").

After completing its own statutory analysis, the Court agrees. Initially, the Court considers the "ordinary, contemporary, common meaning" of the TCPA. *Perrin v. United States*, 444 U.S. 37, 42 (1979). Section 227(c)(5) directly refers to telephone calls but does not define the word "call." The court in *Cole* acknowledged that "Webster's Dictionary from the time of the TCPA's passage in 1991 defines 'call' . . . as 'to get or try to get into communication by telephone.'" *Cole*, 2026 WL 916582, at *1 n.1 (quoting *Alvarez v. Fiesta Nissan, Inc.*, No. 25-343, 2026 WL 202930, at *4 (S.D. Tex. Jan. 26, 2026) (citing Webster's Ninth New Collegiate Dictionary 197 (1990))); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–954 (9th Cir. 2009) (citing Webster's Third New International Dictionary 318 (2002)) (considering the "meaning of the verb 'to call,'" in the TCPA to mean "to communicate with or try to get into communication with a person by a telephone[,]" favorably cited by *Newell*). At its core, "[a] text message[, like a telephone call] is sent via telephone in an attempt to communicate with another person." *Cole*, 2026 WL 916582, at *1 n.1. Since text messages are one way of communicating with another by telephone, the Court agrees with other courts in this District that text messages qualify as phone calls for TCPA purposes. *See Newell*, 2026 WL 927378, at *4 ("Today, there are numerous modes of communicating by telephone; texting is just one such way 'to communicate with or try to get into communication with a person by a telephone.' Therefore, texting fits comfortably within the understood meaning of 'call.'") (internal citation omitted).

Additionally, Section 227(c) prohibits sending telephone solicitations, defined above, as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4). The Court finds that the statute's description of a solicitation as a call or a "message" may be read to include text *messages*. The use of such language is instructive because

it illustrates how solicitations go beyond mere telephone calls. The use of the word "message" therefore bolsters the Court's conclusion that Section 227(c)(5) covers text messages. *See Cole*, 2026 WL 916582, at *1 n.1 ("As further support, [Section] 227(c) prohibits sending 'telephone solicitations' to numbers on the DNC list, and the TCPA defines 'telephone solicitations' as 'the initiation of a telephone call or *message* for the purpose of encouraging the purchase or rental of . . . goods[] or services, which is transmitted to any person.'") (emphasis added).

Next, the Court finds the FCC's interpretations of the TCPA persuasive in concluding that Section 227(c)(5) covers text messages. In *McLaughlin*, the Supreme Court held that district courts are not "absolutely bound by the FCC's interpretation of the TCPA." 606 U.S. at 152; *see also Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–413 (2024) (holding that courts need not defer to an agency's interpretation of a statute). Rather, district courts "must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, 606 U.S. at 155. Yet, district courts may still consider an agency's interpretation of a statute as that interpretation is the product of a "body of experience and informed judgment[.]" *Loper Bright*, 603 U.S. at 394 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

For years, the FCC interpreted Section 227(b) of the TCPA, a similar provision to Section 227(c), to include text messages. *See In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003) (noting that Section 227(b) "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service"). The FCC clarified in 2012 that a confirmation text violated the TCPA's prohibition on automatic dialing systems in Section 227(b). *See In the Matter of Rules and Reguls.*

Case 2:26-cv-00428-JFM Document 17 Filed 10/21/26 Page 10 of 19

*Implementing the Tel. Consumer Prot. Act of 1991, SoundBite Comm'ns, Inc.*, 27 F.C.C. Rcd. 15391, 15392 ¶ 2 (2012) ("*SoundBite*"). The FCC noted it "had concluded that the TCPA's prohibition on autodialers encompasses both voice and text calls, including short message service (SMS) calls," and cited the 2003 regulation. *Id.* & n.7. The Third Circuit adhered to that interpretation of Section 227(b) in concluding that Section 227(b) applied to text messages. *See Gager*, 727 F.3d at 269 n.2; *see also Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("Although the text of the statute refers only to 'calls,' we have held that, under the TCPA, that term encompasses text messages.").

In 2024, shortly before the Supreme Court decided *Loper Bright*, the FCC affirmed that text messages should be regulated under the do-not-call registry as telephone calls:

> The Commission adopts the proposal to codify the National [do-not-call r]egistry's existing protections to text messages. Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the [do-not-call r]egistry. The Commission previously concluded that the national database should allow for the registration of wireless telephone numbers and that such action will further the objectives of the TCPA and the Do-Not-Call Act. The Commission's action is consistent with Federal court opinions and will both deter illegal texts and make [do-not-call] enforcement easier.

*Targeting and Eliminating Unlawful Text Messages, Implementation of the TCPA of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 89 Fed. Reg. 5098-1, 5099, ¶ 6 (2024). In the accompanying regulation, the FCC noted that "[t]he rules set forth in paragraph (c) [at issue here] and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e). The Court finds these regulations persuasive.

Likewise, a text message qualifies as a telephone call for purposes of Section 227(c) when considering the structure of the TCPA. Courts should generally observe a relevant statutory provision based upon its position within the entire statute. *See King v. Burwell*, 576 U.S. 473,

Case 5:26-cv-00428-JMY Document 20 Filed 10/22/26 Page 11 of 19

486 (2015). Examining Section 227(b) of the TCPA is instructive, as both Sections 227(b) and 227(c) refer to telephone calls. The United States Supreme Court, in a case examining Section 227(b)(1)(A)(iii), acknowledged that it was "undisputed" that a text message qualified as a telephone call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), *as revised* (Feb. 9, 2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).") (citation omitted); *see also Gager*, 727 F.3d at 269 n.2 ("The TCPA's prohibition on automated dialing [in Section 227(b)] applies to both voice calls and text messages." (citing *SoundBite*, 27 F.C.C. Rcd. at 15392 ¶ 2; *Satterfield*, 569 F.3d at 952)). Haller maintains that Supreme Court in *Campbell-Ewald* merely meant that the parties did not dispute, for the purposes of the case before it, that text messages were considered calls for TCPA purposes. *See* Mot. Mem. 11. But the Ninth Circuit's opinion in *Campbell-Ewald* (considered by the Supreme Court) favorably cited *Satterfield* and acknowledged that the Ninth Circuit "already applies the TCPA to text messages." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014) (citing *Satterfield,* 569 F.3d at 951–952). That the Supreme Court may not have specifically ruled on whether the TCPA applied to text messages in that case does not diminish the persuasive effect that the use of the word "undisputed" has had on courts in this District. *See Newell*, 2026 WL 927378, at *5; *Pero*, 2026 WL 1747214, at *3; *Cole*, 2026 WL 916582, at *1 n.1. The Court agrees.

To the extent that Haller argues that the fact Congress already amended Section 227(e) of the TCPA to include "text message[s]" supports the reading that Section 227(c) does not cover text messages, *see* Mot. Mem. 9, the argument is without merit. The Court agrees with the reasoning thoroughly provided in *Newell*. There, the court acknowledged Section 227(e) provided that "[i]t shall be unlawful for any person . . . in connection with any voice service or

text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information[.]" *Newell*, 2026 WL 927378, at *6 (citing 47 U.S.C. § 227(e)). But the court found that Section 227(e)'s text directly referred to "caller identification information," which "confirme[ed the court's] view that a 'call' can implicate a voice conversation or a text conversation." *Newell*, 2026 WL 927378, at *6 ("Contrary to [the defendant's] proposal, it is considerably more likely that the 2018 amendment reflects an understanding that the 'telephone call' language in subsections (b) and (c) includes texts and remains inclusive of other ways that telephone users reach out and communicate with each other."). This Court agrees and notes that not only does Section 227(e) refer to "caller identification information," but it also refers to a "caller identification service." Either way, the sender of a text message is also perceived to be a caller.

As noted above, the Court liberally construes the TCPA in favor of consumers. *See Gager*, 727 F.3d at 271. At this stage of the case, the Court finds Section 227(c)(5) covers text messages in its use of the word "call." The Court denies Haller's Motion on this ground.

**B. Whether a Cell Phone User is a "Residential Subscriber"**

Cell phone users who use their phones for personal use qualify as residential subscribers under the TCPA. Section 227(c)(1) protects "residential telephone subscribers." The regulation implementing Section 227(c), 47 C.F.R. § 64.1200(c)(2), also refers to "residential telephone subscribers." Dovberg alleged in the Complaint that he uses his cell phone for residential purposes, and his cell phone number was on the do-not-call registry. *See* Compl. ¶¶ 19–20. These allegations are sufficient to proceed with a do-not-call claim. *See Cole*, 2026 WL 916582, at *1 n.1 ("Consistent with numerous courts who have addressed this issue, I find that a

'residential subscriber' is not limited to a residential landline but rather can include a person who uses a cell phone for personal use.") (citing cases).

Similarly, other courts within the Third Circuit consider a cell phone user to qualify as a "residential telephone subscriber." *Fridline v. Millennia Tax Relief, LLC*, 727 F. Supp. 3d 517, 524 n.45 (M.D. Pa. 2024) (citing *Jackson v. Direct Bldg. Supplies, LLC*, No. 23-1569, 2024 WL 184449, at *4–8 (M.D. Pa. Jan. 17, 2024) (analyzing why cell phone users qualify as "residential telephone subscribers" for purposes of the do-not-call registry)); *see also Rubin v. Staples, Inc.*, No. 25-15515, 2026 WL 881651, at *4–5 (D.N.J. Mar. 31, 2026) ("Section (c)(5) authorizes a private right of action to a 'person who has received more than one telephone call' without regard to what type of line or telephone technology receives those calls."). Moreover, the consensus among courts in the Third Circuit "is that [d]o [n]ot [c]all claims [under Section 227(c)] may apply to cell phones." *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021) (citing *Valdes v. Century 21 Real Est., LLC*, No. 19-5411, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019) ("[I]t is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections.")).

As noted above regarding whether text messages are considered calls under the TCPA, how courts analyze Section 227(b) is instrumental in determining whether the same reasoning applies to Section 227(c). Section 227(b) forbids the use of automated telephone dialing systems and artificial and prerecorded messages to enumerated categories of phone technologies, including "cellular telephone[s]" and "residential telephone line[s.]" 47 U.S.C. § 227(b)(1)(A)–(B). Section 227(b) is so specific, but Section 227(c) is not. This fact is instructive. The Middle District of Pennsylvania noted that "[h]ad Congress wished to limit [S]ection 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated

somewhere in that section that the [do-not-call] registry is limited to a 'residential telephone line' as Congress used that term in the preceding subsection." *Jackson*, 2024 WL 184449, at *6. Additionally, Section 227(c) never references "residential telephones" (ostensibly, landline phones), but instead merely includes "telephone numbers" held by "residential subscribers." *Jackson*, 2024 WL 184449, at *6 (citing 47 U.S.C. § 227(c)(3)). This is further proof that Section 227(c) applies to cell phone users.

Furthermore, FCC regulations support this interpretation. Such regulations define a residential subscriber to mean a "subscriber to a telephone exchange service that is not a business subscriber," which does not differentiate between cell phones and landline phones. 47 C.F.R. § 64.2305(d). Pursuant to an FCC report and order, "there is nothing in [S]ection 227[(b)] to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA. In addition, had Congress intended to exclude wireless subscribers from the benefits of the TCPA, it knew how to address wireless services or consumers explicitly." *In Re Rules & Reguls.*, 18 F.C.C. Rcd. at 14038 ¶ 35. As such, the FCC concluded that "it [wa]s more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections[, because] Congress afforded wireless subscribers particular protections in the context of autodialers and prerecorded calls" in Subsection 227(b). *Id.*

Here, the Court agrees with many of its sister courts and finds that "residential" telephone subscribers in section 227(c) includes cell phone users. As such, Dovberg's "registration with the do-not-call registry," coupled with his allegation that his cell phone is "residential" suffices at this stage. *Dudley*, 2021 WL 3077557, at *5. The Court denies Haller's Motion on this ground.

**C. Private Right of Action for Caller ID Class**

There is a private right of action under Section 227(c)(5) for caller ID claims. Haller relies predominantly on out-of-Circuit-and-District case law, while minimizing case law from this District. Although "district courts are divided on the question [of whether violations of the TCPA regulations' caller identification requirement] can support a claim under a private right of action in Section 227(c)(5)[,]" *Tom v. Delancey Street Grp.*, No. 26-1150, 2026 WL 2255107, at *6 (E.D.N.Y. Aug. 5, 2026) (citing cases), a court in this District found a private right of action for caller ID violations. *See Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 582 (E.D. Pa. 2025) ("*Newell II*") (finding a private right of action under Section 227(c)(5) for violations of the TCPA's caller ID regulations); *see also Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 377, 380 (E.D. Mich. 2025) (concluding that Section 64.1601(e)(1) was most likely promulgated pursuant to Section 227(c) and therefore violations of that regulation are actionable under Section 227(c)(5)).

Specifically, a court in this District thoroughly analyzed whether a private cause of action existed under Section 227(c)(5) for violations of Section 64.1601(e) and concluded that it did. *See Newell II*, 791 F. Supp. 3d at 582. The Court noted that, in Section 227(c), "Congress specifically ordered the FCC to evaluate the use of 'network technologies' and other methods and procedures to protect residential telephone subscribers' privacy rights, and to prescribe regulations implementing the methods and procedures it deemed appropriate." *Id.* Later, "the FCC determined that caller ID was at last an achievable requirement and promulgated [Section] 64.1601(e), requiring telemarketers to use caller ID[, and thus,] a violation of [Section] 64.1601(e) is clearly a violation of regulations prescribed under [Section] 227(c)." *Id.*

This Court agrees with the reasoning in *Newell II*. The Court first considers Section 227(c)(5)'s text. As discussed above, Section 227(c)(5) applies to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity *in violation of the regulations prescribed under this subsection*[.]" Accordingly, Section 227(c)(1) permits the FCC to analyze network technologies and issue regulations. *See* 47 U.S.C. § 227(c)(1). In making these regulations, the FCC would "compare and evaluate alternative methods and procedures (including the use of . . . telephone network technologies, . . ., industry-based or company-specific "do not call" systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages[.]" 47 U.S.C. § 227(c)(1)(A). Such regulations include Section 64.1601(e), which directly addresses and applies to the caller ID regulations.

Second, the administrative record also shows that caller ID is a network technology covered by Section 227(c). Although the FCC initially declined to adopt caller ID regulations as network technologies, *see In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991,* 7 F.C.C. Rcd. 8752, 8761 ¶ 16 (1992), it did so a little over one decade later. Section 64.1601(e) arose from the FCC's rulemaking process, wherein the FCC solicited public comment on whether to adopt a caller ID requirement. *See* Notice of Proposed Rulemaking, 17 F.C.C. Rcd. 17459, 17460–17461, 17472–17473 ¶¶ 1, 21–22 (Sept. 18, 2002) (seeking comment on "whether the Commission should consider any additional 'caller ID' requirements in the context of its review of the TCPA rules. Specifically, should the Commission require telemarketers to transmit the name and telephone number of the calling party, when possible, or prohibit them from blocking or altering the transmission of such information"). Following this rulemaking process, the FCC adopted Section 64.1601(e). *See Rules and Reguls. Implementing*

*the Tel. Consumer Prot. Act of 1991*, 68 Fed. Reg. 44144, 44179 (2003). In the regulation, the FCC acknowledged that "[c]aller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." *Id.* at 44156 ¶ 65. When adopting the regulation, the FCC maintained in a report and order that caller ID would "require all sellers and telemarketers to transmit caller ID information, regardless of their calling systems." *In Re Rules & Reguls.*, 18 F.C.C. Rcd. at 14121 ¶ 179. Following this history, *Newell II* found that caller ID is a "network technology" intended to protect privacy rights, to which Section 227(c) applies. 791 F. Supp. 3d at 578 (quoting *Dobronski*, 773 F. Supp. 3d at 377) ("The agency record thus suggests that caller ID requirements are a telephone network technology or other alternative that the FCC required in an attempt to help consumers enforce their privacy rights against telemarketers. That places [Section] 64.1601(e) in the heartland of [Section] 227(c)."). This Court agrees.

Third, Section 227(c) is the most appropriate section of the TCPA under which to bring a cause of action. Unlike Section 227(b), which relates to automated telephone equipment, and Section 227(d) which applies to fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages, Section 227(c) broadly includes network technologies, including caller ID. *See Newell II*, 791 F. Supp. 3d at 578–579 (citing 47 U.S.C. § 227(d)). As noted above, Section 64.1601(e)'s goal is to protect consumers, meaning it best fits under the section of the TCPA that does just that: Section 227(c).

Fourth, the Court also acknowledges similar cases nationwide that found that Section 227(c) applied to other regulations, including Section 64.1200 (as mentioned and analyzed above). *See Newell II*, 791 F. Supp. 3d at 581 (citing *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020)). As the Court found that Section 227(c)(5) provides a

private right of action for violations of Section 64.1200(c)(2), the same reasoning applies to challenges to Section 64.1601(e). Both regulations seek to protect consumer privacy and encourage transparency. *See Newell II*, 791 F. Supp. 3d at 581 ("Similarly, [Section] 64.1601(e)'s caller [ID] requirements were clearly considered by [the] FCC to be a method to protect the privacy rights of residential telephone consumers, positioning it in the heart of [Section] 227(c)."). Since both Section 64.1200(c)(2) and Section 64.1601(e) seek to protect consumer privacy, and the Court found that Section 227(c)(5)'s private cause of action applies to violations of Section 64.1200, the Court likewise believes that Section 227(c)(5)'s private right of action applies to violations of Section 64.1601(e). *See Newell*, 791 F. Supp. 3d at 582. The Court denies Haller's Motion on this ground.

**D. Caller ID Claim**

Although Haller is correct that it identified itself in the body of text messages, Dovberg nevertheless states a TCPA claim for violating the caller ID regulations because Haller's name is not attached to its telephone number. Dovberg directly alleges that the only identifier was "Middletown, PA." Compl. ¶¶ 27–29 (cleaned up). The TCPA regulations require that telemarketers include the CPN or ANI of the caller. *See* 47 C.F.R. § 64.1601(e)(1); *see also* 47 C.F.R. § 64.1600(b), (e) (noting that CPN stands for calling party number, and ANI stands for automatic number identification). In the alternative, telemarketers may provide "the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number." 47 C.F.R. § 64.1601(e)(1). Here, the text did not disclose Haller's phone number, only that the caller was from Middletown, Pennsylvania. As noted in the Complaint, since Haller did not choose to provide its name alongside the phone number, the "customer setting is to transmit the geographic location of the telephone exchange for the calling telephone

number, and not the caller's name." Compl. ¶ 29. The Complaint contains sufficient facts to show that Haller did not provide its name with the telephone number, nor its customer service number, in violation of Section 64.1601(e). This alone suffices to state a TCPA claim.

That the texts included Haller's business name, *see* Compl. ¶ 22, does not detract from Dovberg's claim. Unlike *Newell II*, where the defendant only linked its website domain, thereby placing the responsibility to identify the sender on the plaintiff, *see* 791 F. Supp. 3d at 584, here, the texts directly say that they were from Haller. *See* Compl. ¶ 22. However, like the plaintiff in *Newell II*, Dovberg would have to open the text to see who sent the message. *See* 791 F. Supp. 3d at 584. Given the TCPA's remedial purpose, the Court finds that Dovberg nevertheless may proceed with his TCPA claim under Section 64.1600(e). *See Newell II*, 791 F. Supp. 3d at 584–585 (finding that the plaintiff stated a claim when four texts included the telemarketer's customer service call-back number but did not include the name of the seller or telemarketer in the text message); *see also Novia v. Mobiz, Inc.*, No. 25-11036, 2026 WL 752181, at *3 (D. Mass. Mar. 17, 2026) (citing *Newell II* and acknowledging that although the defendant "was identified as the sender in the text messages[,]" the plaintiff still had "to waste time checking the text messages[, particularly when the defendant's phone] number was not included in the text, as required under Section 64.1601(e)"). The Motion is denied on this ground.

## V. CONCLUSION

For the foregoing reasons, the Court denies Haller's Motion for Judgment on the Pleadings. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge